[No. A132805. First Dist., Div. Four. Aug. 15, 2012.]

CAMERON SHUTS, as Personal Representative, etc., et al., Plaintiffs and Appellants, v.
COVENANT HOLDCO LLC et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.C.

610

## COUNSEL

Majors & Fox, Frank J. Fox, Lawrence J. Salisbury; McKenna, Long & Aldridge, Christopher J. Healey, Aaron T. Winn; Law Offices of Michael D. Thamer, Michael D. Thamer; Attorneys Against Abuse of Elders, Mark A. Redmond; Janssen Malloy, W. Timothy Needham, Michael J. Crowley; Law Offices of Peter G. Lomhoff and Peter G. Lomhoff for Plaintiffs and Appellants.

Pamela Allen and Brendan White for California Nurses Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Barbara Jones, Kelly Bagby and Michael Schuster for AARP, National Senior Citizens Law Center and Eric Carlson as Amici Curiae on behalf of Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Barry S. Landsberg, Brad W. Seiling, Joanna S. McCallum, Andrew H. Struve and Justin C. Johnson for Defendants and Respondents.

Jacobs & Schlesinger and Johanna S. Schiavoni for EHC Management, LLC as Amicus Curiae on behalf of Defendants and Respondents.

Dechert, H. Joseph Escher III, Steven B. Weisburd and Lily A. North for Beverly Health and Rehabilitation Services, Inc., Beverly Healthcare-California, Inc., GGNSC Fresno LP, GGNSC Stockton LP, and GGNSC Shafter LP as Amici Curiae on behalf of Defendants and Respondents.

Hooper, Lundy & Bookman, Mark E. Reagan, Scott J. Kiepen and Greg B. Sherman for California Association of Health Facilities as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

RUVOLO, P. J.—

## I.

## INTRODUCTION

Appellants Cameron Shuts and Gary Sterling represent a putative class of former and current residents of 16 separately licensed skilled nursing facilities that are in the business of providing long-term, 24-hour care for the elderly and disabled (hereafter plaintiffs).[1] Respondents are interrelated business entities that own and operate the skilled nursing facilities (hereafter collectively referred to as Covenant).[2] Plaintiffs sued Covenant alleging, among other things, that it consistently and intentionally failed to provide adequate nursing staff for its elderly and disabled residents, and that Covenant misrepresented its staffing levels to residents and to the consuming public. Plaintiffs alleged three causes of action in their first amended complaint (FAC): (1) violation of a skilled nursing resident's right to reside in an adequately staffed facility (Health & Saf. Code, § 1430, subd. (b));[3] (2) violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.); and (3) violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.).

Plaintiffs alleged that the inadequacy of the staffing levels at Covenant's facilities was demonstrated by its noncompliance with the statutory mandate that a skilled nursing facility maintain a minimum numeric ratio of 3.2 nursing hours per patient per day (NHPPD). (See § 1276.5, subd. (a).) Covenant filed a demurrer, urging the court to dismiss this dispute because a skilled nursing facility's obligation to provide its residents care at a level of 3.2 NHPPD is not enforceable by a private right of action. It argued that

---

[1] The first amended complaint indicates that Cameron Shuts brings this action in his capacity as "successor-in-interest and personal/legal representative" of Charles Shuts, deceased, a former resident of one of the skilled nursing facilities during the relevant time period. The other named plaintiff in the first amended complaint, Kent Sterling, is described as a conservatee and current resident of one of the skilled nursing facilities during the relevant time period, bringing this action by and through his conservator, Gary Sterling. We have adjusted the title used in this opinion in accordance with these undisputed facts and the corresponding relevant provisions of the California Style Manual.

[2] Plaintiffs claim that the named defendants fit into two general categories: the licensees which purportedly own and operate the skilled nursing facilities, and the companies which own and control those licensees, directly or indirectly. Plaintiffs allege that there exists an "alter ego relationship between and among each of the Covenant Care Defendants" and "each of the acts attributable" to one facility "is also, as a matter of law, legally attributable" to all defendants.

[3] All subsequent undesignated statutory references are to the Health and Safety Code.

because section 1276.5 is a regulatory statute, it can only be enforced by the State Department of Public Health (CDPH). In addition, Covenant warned that litigating the case would necessarily involve the court in a "regulatory 'thicket' of nursing home staffing regulation[s]" that is best left to administrative expertise. Covenant urged the court to dismiss based on the abstention doctrine. The trial court agreed with both arguments, and dismissed plaintiffs' lawsuit without leave to amend.

In the published portion of this opinion we first conclude that while section 1276.5, subdivision (a), may not create a private right of action, section 1430, subdivision (b) does, thereby allowing plaintiffs to sue under this latter statute for a violation of section 1276.5, subdivision (a). As to the court's invocation of the abstention doctrine, at this stage of the proceedings, it is not clear that adjudicating plaintiffs' claims "would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency. [Citations.]" (*Alvarado v. Selma Convalescent Hospital* (2007) 153 Cal.App.4th 1292, 1298 [64 Cal.Rptr.3d 250] (*Alvarado*).) Even if otherwise appropriate, the FAC contained nonequitable claims for relief, including damages, that are not subject to dismissal under the doctrine of equitable abstention. Therefore, we reverse the demurrer as to plaintiffs' first cause of action seeking relief under section 1430, subdivision (b). In the nonpublished portion of this opinion we likewise reverse the trial court's dismissal of the UCL and CLRA causes of action.

## II.

### FACTS AND PROCEDURAL HISTORY

The crux of plaintiffs' FAC was their allegation that Covenant had a "duty under California law to provide sufficient nursing staff and related services." Notwithstanding this duty, plaintiffs claimed that Covenant "persisted in [its] practice of understaffing their skilled nursing facilities throughout the Class Period," which plaintiffs defined as December 15, 2006, through December 16, 2010. Plaintiffs alleged that Covenant's "pattern and practice of systematically understaffing their facilities violates California law . . . ."

As noted, plaintiffs asserted three causes of action. The first cause of action was based on section 1430, subdivision (b), which authorizes a "current or former resident or patient of a skilled nursing facility" to "bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights . . . or any other right provided for by federal or state law or regulation." Section 1430, subdivision (b) authorizes statutory damages, attorney fees, and injunctive relief. It provides that "[t]he licensee shall be liable for up to five hundred

dollars ($500), and for costs and attorney fees, and may be enjoined from permitting the violation to continue."

Plaintiffs' section 1430, subdivision (b) claim is based on Covenant's alleged violation of several provisions of state law, including the violation of plaintiffs' right to reside in a facility that employs an "adequate number of qualified personnel," as provided in the "Skilled Nursing and Immediate Care Facility Patient's Bill of Rights" (§ 1599.1, subd. (a); see Cal. Code Regs., tit. 22, § 72527, subd. (a)(25)) (Patient's Bill of Rights). Plaintiffs assert that in order to satisfy this obligation, Covenant must provide at least 3.2 NHPPD, the *minimum* number of actual nursing hours per patient required in a skilled nursing facility.[4] (§ 1276.5, subd. (a).) Implementing regulations go on to explain that "[s]killed nursing facilities shall employ and schedule additional staff as needed to ensure quality resident care based on the needs of individual residents to ensure compliance with all relevant state and federal staffing requirements." (Cal. Code Regs., tit. 22, § 72329.1, subd. (a).) The FAC alleged that Covenant failed to "meet the minimum staffing requirements" of 3.2 NHPPD on 35 percent or more days of the purported class period.

The allegations of the first cause of action also supported plaintiffs' second and third causes of action based on violations of the UCL (Bus. & Prof. Code, § 17200 et seq.) and the CLRA (Civ. Code, § 1750 et seq.). As part of these two additional causes of action, plaintiffs claimed that the understaffing was systematically concealed and misrepresented to members of the general public, including plaintiffs and their families.

Plaintiffs purported to bring these claims on behalf of themselves and a putative class comprised of all persons who resided in one of Covenant's facilities for "at least one day during which the respective facility did not provide at least 3.2 hours of direct nursing care per patient day." Plaintiffs sought injunctive relief as well as statutory damages, restitution, and attorney fees. The FAC expressly disclaimed any intention to "seek damages for personal injuries, wrongful death or other resident-specific harm that may have been caused by inadequate staff."

Covenant filed a demurrer. Covenant argued that each cause of action alleged in plaintiffs' lawsuit was premised on a theory of noncompliance with the 3.2 NHPPD standard set out in section 1276.5, subdivision (a)—a

---

[4] Nursing hours, as used in section 1276.5, subdivision (a), is defined to mean "the number of hours of work performed per patient day by aides, nursing assistants, or orderlies plus two times the number of hours worked per patient day by registered nurses and licensed vocational nurses (except directors of nursing in facilities of 60 or larger capacity) . . . ." (§ 1276.5, subd. (b)(1).)

"regulatory statute," which is interpreted, implemented, and enforced solely by the CDPH, and which does not provide a cause of action for aggrieved residents of skilled nursing facilities. (See *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 601 [113 Cal.Rptr.3d 498, 236 P.3d 346] (*Lu*).) Alternatively, Covenant urged the court to dismiss plaintiffs' lawsuit in its entirety based on the doctrine of equitable abstention. This doctrine allows a court to abstain from adjudicating a suit that seeks equitable remedies if "granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency. [Citations.]" (*Alvarado, supra,* 153 Cal.App.4th at p. 1298.) Abstention may be appropriate if "the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency," or if "granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means 'of redress. [Citation.]" (*Ibid.*) Covenant contended that plaintiffs were "asking the Court to step into the shoes of a regulatory agency that already is doing its job conducting surveys, issuing deficiencies and remedying them when appropriate . . . ."

The trial court agreed with Covenant's arguments and dismissed plaintiffs' entire case without leave to amend on both grounds. The court's judgment of dismissal was filed on June 13, 2011. This appeal followed.[5]

## III.

## DISCUSSION

### A. *Standard of Review*

As this division held in *Paragon Real Estate Group of San Francisco, Inc. v. Hansen* (2009) 178 Cal.App.4th 177 [100 Cal.Rptr.3d 234]: " 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is

---

[5] We have received numerous amicus curiae briefs to assist this court in deciding the issues presented by this appeal. Specifically, we have granted permission for the California Nurses Association, the AARP, the National Senior Citizens Law Center, and the California Association of Health Facilities to file amicus curiae briefs in support of plaintiffs. We have also granted permission for EHC Management, LLC, and Beverly Healthcare-California, Inc., and related entities to file amicus curiae briefs in support of Covenant.

error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citation.]" (*Id.* at pp. 181–182.)

Plaintiffs suggest that this court should apply a de novo standard of review to the superior court's discretionary dismissal under the equitable abstention doctrine. Normally, this court reviews a trial court's exercise of its discretion to abstain from deciding a plaintiffs' claims only for abuse of that discretion. (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1361 [137 Cal.Rptr.3d 293] (*Klein*); *Alvarado, supra,* 153 Cal.App.4th at p. 1297; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 [104 Cal.Rptr.3d 545] (*Arce*).) But, a trial court's decision that rests on an error of law is itself an abuse of discretion. (See *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939 [124 Cal.Rptr.3d 565]; *Klein, supra,* 202 Cal.App.4th at p. 1361.) In determining whether the court made an error of law, we apply the de novo standard of review. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 [76 Cal.Rptr.3d 325]; *Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 219 [79 Cal.Rptr.2d 910].)

We emphasize the limited scope of the issues before us on appeal. Based on arguments made by Covenant in its demurrer, the trial court dismissed plaintiffs' lawsuit without leave to amend based on two independent grounds: (1) no private right of action was created by section 1276.5, subdivision (a), to enforce the statute's 3.2 NHPPD minimum staffing requirements and (2) the court found it "proper to exercise its discretion and abstain from adjudicating this alleged controversy."

Given the bases for the court's dismissal of plaintiffs' FAC, we emphasize at the outset that we do not intend to decide whether the complaint fails to allege facts sufficient to state a cause of action for reasons that were not raised in Covenant's demurrer or decided by the trial court. (See *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 205 [129 Cal.Rptr.3d 433] (*City of Industry*) ["we need not decide whether the complaint fails to allege facts sufficient to state a cause of action for reasons that were not raised in the demurrer"].)

B. *Plaintiffs' First Cause of Action Under Section 1430, Subdivision (b)*

In support of its demurrer to plaintiffs' first cause of action, Covenant relied heavily on *Alvarado, supra,* 153 Cal.App.4th 1292. The plaintiff in

*Alvarado* brought a class action against a skilled nursing facility and 23 of its affiliates under California's UCL (Bus. & Prof. Code, § 17200 et seq.). (153 Cal.App.4th at p. 1297.) As in this case, the plaintiff in *Alvarado* claimed that "defendants engaged in a pervasive and intentional failure to provide sufficient direct nursing care for the residents of the skilled nursing facilities." (*Id.* at p. 1296.) The lawsuit sought restitution and injunctive relief to require the skilled nursing facilities to comply with the 3.2 NHPPD minimum staffing levels set out in section 1276.5, subdivision (a). (153 Cal.App.4th at p. 1297.) The trial court abstained from adjudicating the case and dismissed the action without leave to amend. (*Id.* at p. 1296.) The appellate court affirmed. (*Id.* at p. 1295.)

On appeal, the *Alvarado* court generally held that courts have the discretion to abstain from providing equitable relief, such as restitution and injunctions, in cases requiring them to assume or interfere with an administrative agency's function or to take on an unnecessary burden in monitoring or enforcing injunctive relief, where other, more effective remedies exist. (*Alvarado, supra*, 153 Cal.App.4th at pp. 1297–1298.) Thus, in *Alvarado*, the trial court acted within its discretion in abstaining from adjudicating the case because CDPH's predecessor agency "has the power, expertise and statutory mandate to regulate and enforce" the 3.2 NHPPD staffing requirement set out in section 1276.5, subdivision (a). (153 Cal.App.4th at p. 1306.) The court reasoned that granting the requested relief would require the court to "assume general regulatory powers over the health care industry through the guise of enforcing the UCL, a task for which the courts are not well equipped. [Citation.]" (*Alvarado*, at pp. 1303–1304.) Because regulatory enforcement of the 3.2 NHPPD mandate provided an "alternative and more effective means of ensuring compliance," the trial court was within its discretion in invoking the abstention doctrine. (*Id.* at p. 1306.)

The trial court in this case acknowledged "that section 1430(b) creates a private right of action and that Plaintiffs have alleged statutory damages in connection with this claim." However, the court indicated it was "not persuaded that Plaintiffs state[d] such a claim because the claim is still, as acknowledged by Plaintiffs, based in part on [the 3.2 NHPPD requirement imposed by] Health and Safety Code section 1276.5. In looking at the statute, it seems clear that the Legislature did not intend to create a private cause of action under section 1276.5. . . ." The court concluded that "despite Plaintiffs' attempt to frame their claim under section 1430(b), the Court finds this claim fails because Plaintiffs cannot allege a private right of action based on a statute for which the Legislature did not intend to create one."

Also, relying on *Alvarado, supra,* 153 Cal.App.4th 1292, the trial court alternatively sustained Covenant's demurrer without leave to amend on the basis of the equitable abstention doctrine, finding that "adjudicating this controversy would require the court to assume general regulatory powers over the health care industry, a task for which the courts are not well-equipped." The trial court found that plaintiffs' remedy in the courts should be limited to a writ of mandate compelling CDPH to enforce section 1276.5.

In arguing that the court erred in sustaining Covenant's demurrer, plaintiffs emphasize that their first cause of action was based on the private right of action created by section 1430, subdivision (b), a statute which was never invoked by the plaintiffs in *Alvarado* nor discussed in that opinion. Plaintiffs point out that by enacting section 1430, subdivision (b), the Legislature has specifically armed residents of skilled nursing facilities with a private right of action for violations of the Patient's Bill of Rights, including the right to reside in a facility that "employ[s] an adequate number of qualified personnel to carry out all of the functions of the facility." (§ 1599.1, subd. (a); see Cal. Code Regs., tit. 22, § 72527, subd. (a)(25).) Consequently, plaintiffs argue *Alvarado* is not dispositive of the issues on appeal, and does not deserve the great weight that the trial court placed upon it.

On this point we find *Wehlage v. EmpRes Healthcare, Inc.* (N.D.Cal. 2011) 791 F.Supp.2d 774 (*Wehlage*), to be persuasive authority.[6] *Wehlage* also involved a plaintiff suing various healthcare corporations for the alleged failure to provide sufficient staffing at affiliated skilled nursing facilities. Like the instant case, and unlike *Alvarado,* the lawsuit in *Wehlage* alleged a cause of action under section 1430, subdivision (b) on behalf of all similarly situated residents.

The *Wehlage* court rejected the argument (made by Covenant in this case and found persuasive by the trial court) "that Plaintiff's section 1430(b) claim . . . to the extent it is based on allegations that [the skilled nursing facilities] violated section 1276.5(a)'s minimum staffing requirement, should be dismissed" because section 1276.5, subdivision (a) "does not provide a right of action under state law . . . ." (*Wehlage, supra,* 791 F.Supp.2d at p. 787.) The *Wehlage* court explained, "Plaintiff asserts a cause of action under section 1430(b) to enforce a right she claims to exist under section 1276.5[, subdivision ](a); she does not bring a cause of action under section 1276.5[, subdivision ](a)." (*Wehlage,* at p. 787.) The *Wehlage* court emphasized

---

[6] See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 507, pp. 571–572 [federal decisions on questions of state law can be persuasive authority].)

that section 1430, subdivision (b) is not a regulatory statute like section 1276.5, but rather confers a private right of action with a specific monetary entitlement for the violation of the rights of a resident of a skilled nursing facility as set forth in the Patient's Bill of Rights. One of the rights conferred on residents of a skilled nursing facility is the right to reside in a facility with an adequate number of qualified personnel to carry out all of the functions of the facility. (§ 1599.1, subd. (a); *Wehlage*, at p. 788.) Section 1276.5, subdivision (a) requires a minimum staffing level of at least 3.2 NHPPD, "provid[ing] an objective measure of what constitutes 'adequate.' " (*Wehlage*, at p. 788; accord, *Walsh v. Kindred Healthcare* (2011) 798 F.Supp.2d 1073, 1088, fn. 8 ["Section 1276.5[, subdivision ](a) may inform what the definition is of 'adequate' qualified personnel under Section 1599.1 with respect to nurses"].) Consequently, the *Wehlage* court concluded, "section 1276.5[, subdivision ](a) may be enforced through a civil action under section 1430[, subdivision ](b)." (*Wehlage*, at p. 788.)

We agree with this analytical framework. As *Wehlage* makes clear, in order to bring a cause of action as provided by section 1430, subdivision (b), it is not necessary to demonstrate that the substantive statute or regulation being enforced—in this case section 1276.5, subdivision (a)—was *itself* intended to confer a private right of action; and the trial court erred in concluding otherwise. (*Klein, supra*, 202 Cal.App.4th at p. 1361 [trial court's decision resting on an error of law is an abuse of discretion].) The Legislature has already determined that a private right of action exists for violations of the Patient's Bill of Rights, including the right to reside in an adequately staffed facility. (§ 1599.1, subd. (a); Cal. Code Regs., tit. 22, § 72527, subd. (a)(25).) The 3.2 NHPPD standard set out in section 1276.5, subdivision (a) helps define this enforceable right.

Covenant argues that "the Legislature did not intend the nurse staffing minimums set forth in [s]ection 1276.5[, subdivision ](a) to be among the rights enforceable under [s]ection 1430[, subdivision ](b)" because section 1276.5, subdivision (a) has "an aggregate, facility-wide focus" as opposed to an individual focus. This argument ignores the fact that section 1430, subdivision (b) authorizes plaintiffs to assert violations of rights conferred upon them by the Patient's Bill of Rights in a civil action, many of which are expressed as aggregate, facility-wide obligations. (See, e.g., § 1599.1, subds. (a) [facility shall employ adequate staff], (c) [facility shall provide appropriate food], (d) [facility shall provide activity program], (e) [facility shall be clean], (f) [facility shall provide operating nurses' call system].) Consequently, we are not concerned that the 3.2 NHPPD minimum staffing

requirement in section 1276.5, subdivision (a) is phrased in terms of responsibilities imposed on a skilled nursing facility. The plain purpose of this provision is to help determine the minimum level of care that a person residing in a skilled nursing facility is entitled to receive. The 3.2 NHPPD standard is therefore germane to defining a resident's right to reside in an adequately staffed facility, which is clearly made privately enforceable by section 1430, subdivision (b). (See *Wehlage, supra,* 791 F.Supp.2d at p. 789 [rejecting identical argument].)

■ The *Wehlage* court also considered and rejected Covenant's alternate argument that abstention was appropriate because plaintiffs have asserted claims involving complex issues that only CDPH has the expertise to address. We agree with the assessment in *Wehlage, supra,* 791 F.Supp.2d 774, that, at least at this very early stage of the proceedings where the critical issues are largely undefined, "[a] judicial determination as to whether [a skilled nursing facility] satisfies its obligation under section 1276.5[, subdivision ](a)'s staffing requirement does not appear to implicate technical or policy determinations usually reserved to an administrative agency." (*Wehlage,* at p. 787.) Nor do plaintiffs' claims "pose any novel issues or suggest a need for the CDPH's expertise." (*Ibid.*)

To be sure, courts are hesitant to intervene in the absence of any legislative or regulatory guidance when a plaintiff essentially is asking the court to make an economic or policy judgment. (See, e.g., *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 218–219 [27 Cal.Rptr.2d 396] [holding that, absent a legislative determination, a court could not declare that bank's service fee was too high without rendering an economic policy judgment].) However, a court should not abstain from deciding a case when the Legislature "already has made the relevant policy determinations . . . ." (*Arce, supra,* 181 Cal.App.4th at p. 501.)

■ Section 1276.5, subdivision (a) speaks in terms that are clearly mandatory, and states that notwithstanding "any other provision of law, commencing January 1, 2000, the minimum number of actual nursing hours per patient required in a skilled nursing facility shall be 3.2 hours . . . ." Consequently, the Legislature already has made the necessary policy judgment that is relevant to plaintiffs' claims; and a skilled nursing facility's obligation under section 1276.5, subdivision (a) is sufficiently specific for a court to competently determine whether such statutory guidance is being followed. (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457,

1474 [49 Cal.Rptr.3d 227] [abstention inappropriate where legislative deter-mination as to the propriety of defendant's actions already has been made through the enactment of the applicable laws]); accord, *Arce, supra,* 181 Cal.App.4th at pp. 501–502; *Blue Cross of California, Inc. v. Superior Court* (2009) 180 Cal.App.4th 1237, 1259 [102 Cal.Rptr.3d 615] (*Blue Cross*).)

In upholding the use of the abstention doctrine, the *Alvarado* court concluded that compliance with the 3.2 NHPPD minimum staffing standard would require the court to make a series of factual findings that would be a "task better accomplished by an administrative agency than by trial courts." (*Alvarado, supra,* 153 Cal.App.4th at p. 1306.) For example, the *Alvarado* court was concerned that calculating the NHPPD would be extremely burden-some and difficult because "section 1276.5, subdivision (b) provides different formulas for calculating nursing hours in different skilled nursing facilities" and "the court would have to determine on a classwide basis the size, configuration and licensing status of skilled nursing and intermediate care facilities." (*Ibid.*)

Importantly, since *Alvarado* was decided in 2007, the CDPH has made significant progress in providing administrative guidance on the 3.2 NHPPD standard, and how it should be calculated.[7] The CDPH has recently published a series of detailed "All Facilities Letters," setting forth an elaborate state audit and penalty scheme for determining and enforcing compliance with the 3.2 NHPPD mandate proscribed by section 1276.5, subdivision (a). For example, in new guidelines provided to skilled nursing facilities on January 31, 2011, the CDPH noted that the 3.2 NHPPD staffing requirement "does not assure that any given patient receives 3.2 hours of nursing care; it is the total number of nursing hours performed by direct caregivers per patient day divided by the average patient census." Furthermore, the mere fact that the CDPH *might* in the future adopt regulations that would shed additional light on the NHPPD standard does not mean that a court should abstain from adjudicating a presently justiciable controversy. (See *Arce, supra,* 181 Cal.App.4th at p. 502.) In fact, appellate courts have found an abuse of discretion where the trial court abstained from hearing an action on the

---

[7] We consider the documents promulgated by the CDPH which were before the trial court when it made its ruling. In determining whether plaintiffs' complaint plead a viable cause of action, we may " 'consider evidence outside the pleadings which the trial court considered without objection. [Citation.]' [Citation.]" (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1065 [20 Cal.Rptr.3d 562].) What was not before the trial court when it ruled on Covenant's demurrer to plaintiffs' FAC is the compilation of documents included in plaintiffs' request for judicial notice filed on April 19, 2012. For this reason, we decline to take judicial notice of these documents. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].)

ground that an administrative agency might regulate the subject matter in question at some future time. (*Ibid.*; *Klein, supra,* 202 Cal.App.4th at pp. 1370–1371.)

We note this will not be the first time courts have been called upon to adjudicate whether skilled nursing facilities have violated applicable staffing standards. In *Conservatorship of Gregory* (2000) 80 Cal.App.4th 514 [95 Cal.Rptr.2d 336], the court concluded that the regulation requiring a skilled nursing facility to " 'employ an adequate number of qualified personnel to carry out all of the functions of the facility' " was relevant to key issues in that case involving elder abuse. (*Id.* at p. 524.) The court stated: "Like statutes, applicable regulations are a 'factor to be considered by the jury in determining the reasonableness of the conduct in question.' [Citations.]" (*Id.* at p. 523.) The court rejected the argument that the jury instructions given in that case, which were based on state and federal regulations "relevant to government enforcement actions" to protect the elderly and disabled, were "too vague to provide meaningful guidance to the jury." (*Ibid.*) In so holding, the court noted that common knowledge of members of a particular vocation may make a regulation specific, and that "the jury heard testimony describing how nursing home professionals construed and applied the federal and state regulatory standards regarding sufficient staff." (*Id.* at p. 524.) As *Conservatorship of Gregory* illustrates, litigation of plaintiffs' claims is not beyond the capacity of a court to understand or evaluate.[8]

█ Here, the trial court clearly believed the proper recourse for residents of an understaffed skilled nursing facility was to seek "appropriate writ relief . . . to compel the Department of Health Services to enforce section 1276.5." Along these same lines, Covenant proposes that we stay plaintiffs' action under the doctrine of primary jurisdiction for the purpose of allowing CDPH to decide whether Covenant is meeting the 3.2 NHPPD standard; and if a violation is found, CDPH can impose administrative penalties. (See *Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 558–559, fn. 5 [53 Cal.Rptr.2d 878] [where a claim requires "resolution of issues which . . . have been placed within the special competence of an administrative body," the primary jurisdiction doctrine permits courts to suspend "judicial process . . . pending referral of those issues to the administrative body for its view"].)

█ However, by enacting section 1430, subdivision (b), the Legislature specifically authorized skilled nursing facility residents *themselves* to bring

---

[8] In fact, it is well settled that if a jury finds that a skilled nursing facility has violated applicable regulations, such determination entitles the plaintiff to a negligence per se jury instruction and it is an abuse of discretion for a trial court to refuse such an instruction. (See, e.g., *Norman v. Life Care Centers of America, Inc.* (2003) 107 Cal.App.4th 1233, 1246–1248 [132 Cal.Rptr.2d 765].)

actions to remedy violations of their rights rather than forcing them to depend upon the CDPH to take action. (See *Wehlage, supra,* 791 F.Supp.2d at p. 789 ["that the CDPH may enforce section 1276.5(a) does not preclude residents from doing so"].) The importance of this private right of action is demonstrated by the Legislature's expression that "under no circumstances may a patient or resident waive his or her right to sue . . ." under section 1430, subdivision (b), "for violations of rights under the Patients Bill of Rights, or other federal and state laws and regulations . . . ." (*Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 476 [58 Cal.Rptr.3d 585] (*Fitzhugh*).) Therefore, it would frustrate the main purpose of section 1430, subdivision (b) to conclude that courts should abstain from adjudicating claims under this statute because CDPH may be more capable of enforcing the adequate staffing requirements imposed by law.

We also find it significant that when the Legislature amended section 1430, subdivision (b) in 2004, it expanded rather than narrowed the scope of the legislation to allow a private right to sue for damages, not just for a violation of the Patient's Bill of Rights, but for a violation of "any other right provided for by federal or state law or regulation." (Stats. 2004, ch. 270, § 2, pp. 3138–3139; see *Fitzhugh, supra,* 150 Cal.App.4th at p. 473, fn. 2.) This amendment was due to the "concern that enforcement by CDPH would be constrained by financial and demographic pressures in the coming years." (*Wehlage, supra,* 791 F.Supp.2d at pp. 788–789.) Therefore, denying a private right of action on the grounds that statutory compliance is better achieved by turning the matter over to CDPH represents an unwarranted frustration of the Legislature's desire to supplement administrative action with private enforcement. (*Ibid.*)

Furthermore, because the Legislature has made the remedies prescribed by section 1430, subdivision (b) cumulative to "any other remedy provided by law," (*id.,* subd. (c)) the arguments made by Covenant forewarning of the problems created by parallel private and administrative enforcement of the law—i.e., inconsistent rulings on calculating the 3.2 NHPPD standard and duplicative enforcement—have obviously been considered and rejected by our state lawmakers.

█ In any event, plaintiffs also note that unlike *Alvarado,* where the plaintiff solely sought equitable remedies under the UCL, their first cause of action seeks monetary damages and attorney fees, as well as equitable relief, as authorized by section 1430, subdivision (b).[9] (See *Alvarado, supra,* 153

---

[9] Section 1430, subdivision (b), states in part: "The licensee shall be liable for up to five hundred dollars ($500), and for costs and attorney fees, and may be enjoined from permitting the violation to continue." In an argument raised for the first time on appeal, Covenant argues that the monetary relief provided by section 1430, subdivision (b) is, in reality, a civil penalty

Cal.App.4th at p. 1297.) A court of equity's discretion to invoke the abstention doctrine has been limited to cases where the court has been asked only to award some type of equitable relief, as opposed to a damages award. (See, e.g., *Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781, 795 [114 Cal.Rptr.2d 623].) Consequently, the abstention doctrine does not apply to plaintiffs' legal claims, and the court had no discretion to apply this doctrine in dismissing the first cause of action in its entirety. (See *Wehlage, supra,* 791 F.Supp.2d at p. 786 ["the equitable abstention doctrine does not afford the Court discretion to abstain from hearing Plaintiff's claims for damages under section 1430[, subdivision ](b)"]; *Walsh v. Kindred Healthcare, supra,* 798 F.Supp.2d at p. 1085 [courts have no discretion to abstain from adjudicating § 1430, subd. (b) claims to the extent damages are being requested].) Therefore, the trial court's reliance on the doctrine of equitable abstention to dismiss plaintiffs' section 1430, subdivision (b) claim in its entirety was misplaced. (See, e.g., *Blue Cross, supra,* 180 Cal.App.4th at p. 1259 [noting that trial court correctly declined to "abstain[] from adjudicating the complaint in toto" when "several remedies," including civil penalties, were still available].)

▮ In the end, given the " ' "clear, understandable, unmistakable terms" ' " of section 1430, subdivision (b) indicating an intent to create a private right of action for violation of a current or former resident's right to adequate staffing, our ultimate inquiry is simply one of reading and enforcing the statutory language. (*Lu, supra,* 50 Cal.4th at p. 597.) Unless and until the Legislature itself reexamines the scope of the private right of action set out in section 1430, subdivision (b), California law clearly and unambiguously grants current and former residents of skilled nursing facilities an absolute right to have their claims for statutory damages and injunctive relief decided "in a court of competent jurisdiction." (§ 1430, subd. (b).) Accordingly, the trial court erred in dismissing plaintiffs' first cause of action under section 1430, subdivision (b) after concluding that plaintiffs had no private right of action under *this* statute through which the minimum nursing standards of section 1276.5 can be judicially enforced, and alternatively in finding that equitable abstention was appropriate.

C. *Plaintiffs' Second and Third Causes of Action under the UCL and CLRA**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

which is equitable in nature. As this argument was not raised in Covenant's demurrer, we do not consider it now. (See *City of Industry, supra,* 198 Cal.App.4th at p. 205.)

*See footnote, *ante,* page 609.

## IV.

## DISPOSITION

The judgment dismissing this action without leave to amend is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are awarded to plaintiffs.

Reardon, J., and Rivera, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 14, 2012, S205528.