Filed 5/22/14 (appendix not available electronically)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOSHUA DAVID et al., <br><br>    Plaintiffs and Appellants, <br><br> v. <br><br> DAVID HERNANDEZ et al., <br><br>    Defendants and Respondents. | 2d Civil No. B245342 <br> (Super. Ct. No. 56-2011-00391849-CU-PA-VTA) <br> (Ventura County) |

We have previously commented on the well-known rules attendant to the review of orders granting and denying a motion for a new trial, in both the civil and criminal contexts. (*Baker v American Horticulture Supply, Inc.*, (2010) 186 Cal.App.4th 1059, 1067-1068; *People v. Andrade* (2000) 79 Cal.App.4th 651, 661.) Generally speaking, the rules are designed to affirm the trial court's ruling. This is the rare case where we reverse an order denying a motion for new trial. We caution that not every legal mistake or unsound course of reasoning will inexorably result in reversal of an order denying a motion for new trial. Where, as here, the legal error strikes at the heart of the motion for new trial, we are compelled to reverse.

Joshua David and Natalie Pierson appeal from the judgment entered in favor of David Hernandez and D & H Trucking, respondents. Appellants brought a negligence action against respondents. The action arose out of a collision between appellants' vehicle and Hernandez's truck. The jury returned a special verdict finding that Hernandez was negligent but that his negligence was not a substantial factor in causing harm to appellants. Appellants contend that the verdict is fatally inconsistent because "a finding

of causation flows automatically from the negligence finding."  Appellants also contend that the evidence is insufficient to support the jury's finding that Hernandez's negligence was not a substantial factor.  Finally, appellants argue that the trial court abused its discretion in refusing to grant their motion for a new trial.  We conclude that the verdict is not fatally inconsistent and that the evidence is not insufficient.  As indicated, we reverse the order denying the motion for a new trial.

*Facts*

"Following well-established rules on appellate review after a trial on the merits, we construe the facts in the light most favorable to the judgment.  [Citation.]"  (*Hub City Solid Waste Services, Inc. v. City of Compton* (2010) 186 Cal.App.4th 1114, 1119; see also *People v. Dement* (2011) 53 Cal.4th 1, 7, fn. 3 [" 'In light of the sufficiency of the evidence contentions that follow, we set forth the facts here in the light most favorable to the judgment' "].)

Hernandez was an independent trucker with more than 30 years of experience as a truck driver.  On June 28, 2010, he was driving a "big rig" (hereafter truck) consisting of a tractor and a flatbed trailer.  He was transporting bags of cement from Sun Valley to Santa Barbara.

While driving northbound on Pacific Coast Highway, Hernandez decided to stop for a rest break.  The highway at that point has two lanes, one lane in each direction. Hernandez did not park on the right side of the northbound lane because there were "no parking" signs and the shoulder was not wide enough to accommodate his truck.  He activated his left-turn signal and drove across the southbound lane into a parking area adjacent to that lane.  He "pulled over and stopped" in the parking area, which was next to the beach.  Hernandez's truck was headed north toward oncoming southbound traffic. A bike lane and a "no parking" lane separated the parking area from the southbound lane. Appendix A, which is attached to this opinion, is a to scale drawing that shows the "asphalt paved parking area" as well as the bike lane and "no parking" lane.  The drawing was made by a licensed land surveyor.

2

Hernandez took a nap. When he awoke, he decided to continue driving northbound on Pacific Coast Highway. Since it was dusk, he turned on all of the truck's lights, including his "flashers." Hernandez explained that "[t]he flashers are the turn signals." He drove his tractor into the middle of the bike and "no parking" lanes and came to a complete stop. Hernandez did not see any traffic, so he drove across the southbound lane and made a left turn into the northbound lane of Pacific Coast Highway. When Hernandez entered the southbound lane, he was driving at a speed of between 10 and 12 miles per hour. He "veer[ed] to the right" so he could "get [his] whole vehicle into the northbound lane" as quickly as possible.

Upon entering the northbound lane, Hernandez saw the headlights of a vehicle traveling toward him in the southbound lane. He estimated that the vehicle was approximately 500 feet away. After checking his mirrors, Hernandez noticed that the vehicle was only 100 to 125 feet away. At that time his tractor was totally in the northbound lane. The end of the trailer, however, was in the southbound lane. To no avail, Hernandez blinked his headlights and sounded his horn. The vehicle collided with the left side of the end of the trailer, which was still in the southbound lane. The point of impact was approximately 65 feet from the front of the truck. The vehicle was traveling within the speed limit at about 45 miles per hour when it struck the trailer.

Appellant David was the driver of the vehicle. Appellant Pierson was seated in the front passenger seat. David and Pierson were 18 years old. Shortly before the collision, Pierson asked David if he wanted to listen to music. David replied, "[S]ure." Pierson intended to play music on David's laptop computer. She put the laptop on her lap and opened it, but the power would not turn on. She closed the laptop and placed it on the floor. Pierson looked up and saw a bright light in the northbound lane. She turned to look at David and "saw his eyes get wide." Pierson "saw something really dark" ahead of the vehicle, saw David "begin to turn the wheel," and "then the crash happened."

David has no recollection of the collision. The last thing he remembered was that Pierson had brought his laptop "up from the floor" and was "opening it up" so that they could listen to music. There was no evidence that David had applied the brakes before

3

the collision. (In their opening brief, appellants acknowledge that David "did not brake.") Respondent's accident reconstruction expert testified that he "didn't see any evidence . . . that would indicate what's called an evasive maneuver by the driver of the [vehicle]." The expert continued: "[B]ased on the information that we have and all the data, it was literally drive, drive, drive, bang."

The collision occurred at approximately 8:39 p.m., "four minutes before the end of civil twilight" and 25 minutes after sunset. Respondents' expert testified that, until the end of civil twilight, "it's generally judged that you can conduct ordinary activities outdoors without the need for artificial illumination." "[O]nce you get to the end of civil twilight, it starts to get dark pretty fast." But "there's still lots of light after the end of civil twilight." The expert opined that, at four minutes before the end of civil twilight, a person would be able to see the outlines of trucks "and also even color."

On May 31, 2012, respondents' expert participated in an accident reconstruction at the location of the collision. He testified that, at four minutes before civil twilight on May 31, 2012 (8:29 p.m.), "there was definitely enough light to see vehicles, distinguish objects. It was pretty evident." At the time of the collision on June 28, 2010, visibility was good to excellent, and the conditions were "substantially similar" at the time of the accident reconstruction. Another expert who had participated in the accident reconstruction opined that, even if the lights on Hernandez's truck had not been turned on, a driver traveling southbound "could make out the tractor and the trailer . . . in enough time to perceive, react, and stop."

One of the lights on Hernandez's truck was not functioning: the front right-turn signal adjacent to the tractor's right headlight. All of the other lights were turned on before the collision. These lights included the tractor's headlights, the taillights at the back of the trailer, and five "running lights" on top of the tractor. Hernandez had installed a right-turn signal on top of the tractor's right fender and a left-turn signal on top of the left fender. These signals, as well as the front left-turn signal adjacent to the left headlight, were flashing. There was a turn signal in the center of each side of the trailer, and these lights were also flashing. There was a light in the front and rear of each side of

4

the trailer, and these lights were turned on.  In addition, the turn signals at the back of the trailer were flashing.

The trailer had 13 "reflector strips" on each side.  Each strip was about 12 inches long.  The reflector strips illuminated "[w]hen the headlights hit them."  A photograph of the left side of the trailer shows that the reflector strips were in a deteriorated condition.  The jury was instructed that "[u]nder state law reflector strips were not required for this trailer."  Hernandez testified that reflector strips were mandated by law beginning in 1993, but his trailer was not required to have them because it was built before 1993.  Hernandez said that he "wouldn't have driven a trailer without [reflector strips]."

*Jury Instructions on Negligence and Causation*

The trial court instructed the jury on the general principles of ordinary negligence and negligence per se.  "Under the doctrine of negligence per se, the plaintiff 'borrows' statutes to prove duty of care and standard of care.  [Citation.]  The plaintiff still has the burden of proving causation."  (*Johnson v. Honeywell Intern. Inc.* (2009) 179 Cal.App.4th 549, 558.)  "The doctrine of negligence per se is based on 'the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation.'  [Citation.]"  (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1226.)

The negligence per se instructions were based on the following alleged violations of the Vehicle Code:[1] section 22502, subdivision (a) ("Where no curbs or barriers bound a two-way roadway, right-hand parallel parking is required unless otherwise indicated"); section 22502, subdivision (b)(2) (vehicle may not "stop or park upon a roadway in a direction opposite to that in which traffic normally moves"); section 21804 (driver of a vehicle about to enter or cross a highway must yield the right-of-way to traffic on the highway); section 21650 (vehicle must be driven upon the right half of the roadway); section 22107 ("No person shall turn a vehicle from a direct course or move right or left

---

[1] Unless otherwise stated, all statutory references are to the Vehicle Code.

5

upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal"); section 22108 ("Any signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning").

The court instructed the jury that appellants must prove that Hernandez was negligent and that his negligence "was a substantial factor in causing . . . harm" to them. The instructions defined "substantial factor" as follows: "A substantial factor . . . is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct."

### Alleged Inconsistent Verdict and Sufficiency of the Evidence

Sitting as trier of fact, the jury found that Hernandez was negligent but that his negligence was not a substantial factor in causing harm to appellants. The finding on the substantial factor issue was unanimous. Appellants argue that the verdict is fatally inconsistent because "a finding of causation flows automatically from the negligence finding." Furthermore, appellants contend that the evidence is insufficient to support the jury's finding that Hernandez's negligence was not a substantial factor. Appellants assert that "undisputed evidence . . . established causation as a matter of law."

"A special verdict is inconsistent if there is no possibility of reconciling its findings with each other. [Citation.]" (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357.) "On appeal, we review a special verdict de novo to determine whether its findings are inconsistent. [Citation.] . . . ' " 'Where the findings are contradictory on material issues, and the correct determination of such issues is necessary to sustain the judgment, the inconsistency is reversible error.' " [Citations.]' [Citation.] . . . The proper remedy for an inconsistent special verdict is a new trial. [Citation.]" (*Id.*, at p. 358.)

As to the claim of insufficiency of the evidence, "we apply the familiar substantial evidence standard of review: We view all of the evidence in the light most favorable to

6

the judgment, drawing every reasonable inference and resolving every conflict to support the judgment. [Citation.] 'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact . . . .' " (*Jonkey v. Carignan Const. Co.* (2006) 139 Cal.App.4th 20, 24.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]" (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

"The jury factually found [that Hernandez] was negligent without specifying the way in which [he] was negligent. Thus, the record is 'silent' on the jury's theory of negligence." (*Jonkey v. Carignan Const. Co.*, *supra*, 139 Cal.App.4th at p. 24.) "Where, as here, there is no special finding on what negligence is found by the jury, the jury's finding is tantamount to a general verdict. As long as a single theory of negligence is lawfully rebutted on a lack of causation theory, it matters not that another theory of negligence is not so rebutted. [Citation.]" (*Id.*, at p. 26.)

There are several theories of negligence that the jury could have reasonably concluded had been rebutted for lack of causation. The jury could have found that Hernandez was negligent because he was driving a truck that did not have a functioning front right-turn signal. Since the collision occurred while Hernandez was turning left into the northbound lane of Pacific Coast Highway, this negligence could not have been a substantial factor in causing the collision.

The jury could have found that Hernandez was negligent because, in addition to activating his left turn signals, he activated the right turn signals on the right fender of the tractor and the right side and back of the trailer. Since Hernandez was making a left turn into the northbound lane of Pacific Coast Highway, the right turn signals should not have been flashing. But these signals would not have been visible to David as he drove southbound on Pacific Coast Highway.

7

The jury could have found that Hernandez was negligent in failing to maintain the reflector strips and two lights on the left side of the trailer. The reflector strips were "chewed up." After the collision, the light on the front left side of the trailer was popped "out of the socket and . . . was just hanging there." The light on the rear left side of the trailer was missing. Hernandez testified that these lights were turned on and in good condition before the collision. Appellants' expert, on the other hand, opined that the condition of these lights before and after the collision was the same. The jury could have credited the expert's testimony but reasonably concluded that Hernandez's negligence in failing to maintain the lights and reflector strips was not a substantial factor in causing the collision because (1) there was sufficient natural light to see the trailer, and (2) David was distracted by Pierson's unsuccessful attempt to play music on his laptop and would not have seen the reflector strips and side lights even if they had been in good condition.

Finally, the jury could have found that Hernandez was negligent because, before entering the southbound lane, he did not stop and survey his surroundings at the vantage point that would have given him the best view of oncoming traffic. Appellants' expert opined that Hernandez did not "position his truck in an optimum position to get the best line of sight in both directions before pulling onto that highway." The jury could have reasonably concluded that this negligence was not a substantial factor because Hernandez would not have seen David's vehicle if he had positioned his truck in the "optimum position." Respondents' expert testified that, when Hernandez pulled out into the roadway, "it's possible there simply was no available sight line" that would have revealed David's vehicle, which was about 1,000 feet away.

Appellants maintain that Hernandez was negligent per se because the evidence conclusively establishes that he violated section 22502, subdivisions (a) and (b)(2). We disagree. Reasonable minds could differ on this issue. Section 22502 requires that, when a vehicle parks upon a *roadway*, it must parallel park on the right-hand side facing the

8

direction of traffic.[2]  Section 530 defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel."  It is reasonable to infer that Hernandez was not parked upon a roadway but was instead parked in a paved parking area that was separated from the roadway by a bike lane and a "no parking" lane.

The jury considered whether Hernandez was legally parked.  During its deliberations, the jury asked: "According to Vehicle Code section 22502, is it legal or illegal to park on the adjacent parking area of the road where Mr. Hernandez parked in the opposite direction . . .?"  The court responded by referring the jury to the instructions.  It is reasonable to infer that the jury found that Hernandez was legally parked.

Appellants argue that, in any event, "Hernandez's trailer was still illegally - and thus negligently - in [David's] lane, and thus a cause of the accident."  This argument lacks merit.  Appellants have not cited any statute that made it illegal for the trailer to be in the southbound lane while the truck was completing its left turn into the northbound lane.  To execute the left turn, Hernandez had to drive across the southbound lane.  In so doing, he did not drive on the wrong side of the road in violation of section 21650.  (*Id.*, subd. (b) [no requirement to drive upon right half of roadway "[w]hen placing a vehicle in a lawful position for, and when the vehicle is lawfully making, a left turn"].)

Moreover, the jury could have reasonably concluded that Hernandez did not fail to yield the right-of-way to David's vehicle in violation of section 21804, subdivision (a) because the vehicle was too far away to constitute an "immediate hazard" when Hernandez entered the southbound lane.  Section 21804, subdivision (a), which was

---

[2] Section 22502, subdivision (a) provides: "Except as otherwise provided in this chapter, a vehicle stopped or parked upon a *roadway* where there are adjacent curbs shall be stopped or parked with the right-hand wheels of the vehicle parallel with and within 18 inches of the right-hand curb . . . .  Where [as in the instant case] no curbs or barriers bound a two-way *roadway*, right-hand parallel parking is required unless otherwise indicated."  (Italics added.)  Subdivision (b)(2) of section 22502 provides that a vehicle is not permitted "to stop or park upon a *roadway* in a direction opposite to that in which traffic normally moves upon that half of the *roadway* on which the vehicle is stopped or parked."  (Italics added.)

included in the jury instructions, provides: "The driver of any vehicle about to enter or cross a highway from any public or private property, or from an alley, shall yield the right-of-way to all traffic . . . approaching on the highway close enough to constitute an *immediate hazard*, and shall continue to yield the right-of-way to that traffic until he or she can proceed with reasonable safety."  (Italics added.)

Pursuant to section 21804, subdivision (b), which was also included in the jury instructions, the jury could have determined that David was required to yield the right-of-way to Hernandez.  The subdivision provides: "A driver having yielded as prescribed in subdivision (a) may proceed to enter or cross the highway, and the drivers of all other vehicles approaching on the highway shall yield the right-of-way to the vehicle entering or crossing the intersection."

Accordingly, the special verdict is neither inconsistent nor unsupported by substantial evidence.  The jury could have reasonably concluded that the collision was caused by David's inattentiveness to the road ahead of him rather than any act of negligence committed by Hernandez.

We reject appellants' argument that, because Pierson "did not drive negligently," the "judgment against [her] should be set aside."  Pierson's lack of negligence does not warrant a recovery from respondents if Hernandez's negligence was not a substantial factor in causing her harm.

*Motion for New Trial*

"The powers of a trial court in ruling on a motion for new trial are plenary.  The California Supreme Court has held that the trial court, in ruling on a motion for new trial, has the power 'to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact' [citation], that the court sits as 'an independent trier of fact' [citation], and that it must 'independently assess[ ] the evidence supporting the verdict' [citation].  The trial judge has 'to be satisfied that the evidence, as a whole, was sufficient to sustain the verdict; if he was not, it was not only the proper exercise of a legal discretion, but his duty, to grant a new trial.'  [Citation.]" (*Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503.)

10

"[A] motion for new trial predicated on the ground[] of the insufficiency of the evidence . . . is addressed to the sound discretion of the trial judge; his action in refusing a new trial will not be disturbed on appeal unless it is affirmatively shown that he abused his discretion. [Citation.]" (*Charles D. Warner & Sons, Inc. v. Seilon, Inc.* (1974) 37 Cal.App.3d 612, 616.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)

After oral argument, we requested supplemental letter briefs on whether the trial court had "abuse[d] its discretion in denying the motion for a new trial because its findings do not support and are inconsistent with its conclusion 'that there was sufficient evidence . . . that lack of attention on the part of the plaintiff driver [David] was in fact the cause of the accident.' "[3] We noted: "In its written order denying appellants' motion for a new trial, the court expressly found that Hernandez had violated Vehicle Code section 22502 by parking his truck on the left side of the highway facing oncoming traffic. The court stated: 'There was no evidence whatsoever to support any conclusion but that [Hernandez] parked in violation of Vehicle Code § 22502.' " We asked, "Does this express finding constitute an implied finding that Hernandez was negligent per se for failing to comply with section 22502?"

In our request for supplemental letter briefs, we also noted that the trial court had expressly "found that (1) 'the front end of [David's] vehicle collided with the tail end of [Hernandez's] truck while it was still in the southbound lane,' and (2) " 'the tail end of the truck would not have been in the southbound lane but for its having entered from the

_____

[3] The court's full statement of its reason for denying the motion was as follows: "After review of all of the evidence, it appears to the Court that there was sufficient evidence through expert testimony that a jury could have found that a reasonable driver who was paying attention to his or her driving and the road in front of him or her would have seen the truck bed in their lane in time to take evasive action and that lack of attention on the part of the plaintiff driver was in fact the cause of the accident."

11

right, a position in which it had no legal right to be.' " We asked, "In view of these findings, and assuming for purposes of discussion that the court impliedly found that Hernandez was negligent per se for failing to comply with section 22502, did the court necessarily find that Hernandez's negligence was a substantial factor in causing the collision?"

In their supplemental letter brief, respondents argue that it is improper for an appellate court to conclude that the trial court abused its discretion in denying a motion for a new trial because its findings are "inconsistent with its ultimate order declining to overturn the jury's no-causation finding." "[T]his court should independently review the record and determine if the evidence supports the judgment. If it does, the judgment on the jury's verdict should be affirmed, without regard to the trial judge's statements about her personal view of the evidence."

"To look at it another way," respondents continue, " 'an order denying a new trial will not be disturbed if the record shows any basis upon which it may be upheld.' (*Landrum v. Severin* (1951) 37 Cal.2d 24, 28; . . . .) An exception to that basic principle warrants review of the trial court's reasoning in the context of an order *granting* a new trial motion on the grounds of insufficiency of the evidence, but no such exception exists as to an order denying a new trial motion." Respondents are referring to the rule that, "[a]lthough a trial court is statutorily required to state its reasons for *granting* a motion for new trial, it is not required to specify any reasons for *denying* the same motion. [Citation.]" (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1272, fn. 17; see also Code Civ. Proc., § 657 ["When a new trial is granted . . . the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated"]. ) "Simply put," respondents assert, "this court can[not] reverse the denial of [appellants'] new trial motion on the ground that the trial court's (unnecessary) remarks about the judge's personal viewpoint on the evidence are inconsistent with the order finding reasonable support for the jury's no-causation finding . . . , so long as the record indicates that the court understood the scope of discretion in ruling on the new trial motion, and exercised that discretion."

12

Although a trial court is not required to specify its reasons for denying a motion for a new trial, a reviewing court must not turn a blind eye to reasons or findings stated on the record. The standard of review is abuse of discretion. (*Charles D. Warner & Sons, Inc. v. Seilon, Inc.*, *supra*, 37 Cal.App.3d at p. 616.) "Where the trial court's decision rests on an error of law, . . . the trial court abuses its discretion." (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 742.) In determining whether the trial court made an error of law, a reviewing court should consider the trial court's reasons and findings. The de novo standard of review applies to this determination. (*Shuts v. Covenant Holdco LLC* (2012) 208 Cal.App.4th 609, 617.)

Here, the trial court's findings show that its denial of appellants' motion for a new trial rested on an error of law. In expressly finding that Hernandez violated section 22502 by parking his truck on the left side of the highway facing oncoming traffic, the trial court necessarily found that Hernandez had been negligent per se. In further finding that "the tail end of the truck would not have been in the southbound lane but for its having entered from the right, a position in which it had no legal right to be," the trial court necessarily found that Hernandez's negligence per se was a substantial factor in causing the collision with David's vehicle. The trial court noted that, in concluding that section 22502 was applicable, it had "relied upon" *Crittendon v. Superior Court* (1964) 61 Cal.2d 565. The court quoted the following passage from *Crittendon*: "[L]eft-hand parking surely poses a substantial highway hazard. The vehicle must not only turn in front of oncoming traffic in order to reach the parking area, but to return to the highway must pass across the left-hand lane and merge with the traffic in the right-hand lane." (*Id.*, at p. 570.)

In view of the trial court's findings, it could not have reasonably concluded "that there was sufficient evidence . . . that lack of attention on the part of the plaintiff driver [David] was in fact the cause of the accident." David's inattentiveness could not have been the sole cause because the accident would not have occurred but for Hernandez's

negligence per se in violating section 22502. "If the actor's wrongful conduct operated concurrently with other contemporaneous forces to produce the harm, it is a

13

substantial factor, and thus a legal cause, if the injury, or its full extent, would not have occurred but for that conduct.  Conversely, if the injury would have occurred even if the actor had not acted wrongfully, his or her conduct generally cannot be deemed a substantial factor in the harm." (*In re Ethan C.* (2012) 54 Cal.4th 610, 640.)  Pursuant to the trial court's findings, the tail end of Hernandez's truck would not have been in the southbound lane at the time of the collision, and the collision therefore would not have occurred, if Hernandez had not parked in violation of section 22502.

In its order denying a new trial, the court stated, "The question then is whether or not there was sufficient evidence to support a finding of negligence under these facts [i.e., its findings] but no substantial causation of damage."  Contrary to the court's ruling, its findings legally compelled it to conclude that Hernandez's negligent conduct was a substantial factor in causing the collision.  The court was required to grant a new trial to afford the jury an opportunity to apply comparative fault principles.  "Under the principles of comparative fault, a person's negligent conduct [is] assigned a share of fault greater than zero percent . . . when the conduct was a substantial factor in the causation of the pertinent injuries.  [Citations.]"  (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1287.)  " '[L]iability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault.'  [Citation.]"  (*Aidan Ming-Ho Leung v. Verdugo Hills Hosp.* (2012) 55 Cal.4th 291, 303.)  "The comparative fault doctrine 'is designed to permit the trier of fact to consider all relevant criteria in apportioning liability.  The doctrine "is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss.' "  [Citation.]' [Citation.]"  (*Pfeifer v. John Crane, Inc.*, *supra*, 220 Cal.App.4th at p. 1285.)

14

"All exercises of discretion must be guided by applicable legal principles . . . . [Citations.]  If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law.  [Citation.]  Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.  [Citation.]"  (*Farmers Insurance Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.)  Here, the trial court's discretionary order denying appellants' motion for a new trial was based on an incorrect legal assumption that, despite its findings, the evidence was sufficient to show that Hernandez's negligence in violating section 22502 was not a substantial factor in causing the collision.  This legal error establishes an abuse of discretion.  (See *People v. Superior Court (Humberto S.)*, *supra*, 43 Cal.4th at p. 755 ["because the trial court's decision to recuse numerous prosecutors in this case rested on an error of law, it was an abuse of discretion"].)

*Disposition*

The judgment is reversed and the matter is remanded for a new trial.  Appellants shall recover their costs on appeal.

CERTIFIED FOR PUBLICATION


                                                    YEGAN, J.


We concur:



GILBERT, P.J.



PERREN, J.


15

Rebecca Riley, Judge

Superior Court County of Ventura

_____

John H. Howard and Gregory Phillips, Law Offices of John H. Howard. Wendy C. Lascher, John A. Hribar; Ferguson, Case, Orr, Paterson, LLP, for Appellants.

Horvitz & Levy, Lisa Perrochet and Emily *v.* Cuatto.  Mark G Cunningham, for Respondents.