Filed 7/23/19 (unmodified opinion attached)
order modifying opn. filed 6/27/19 and denying rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FRANCES RIVERA et al.,<br><br>      Plaintiffs and Respondents,<br><br>v.<br><br>JENNIFER KENT, as Director, etc., et al.,<br><br>      Defendants and Appellants. | A147534<br><br>(Alameda County<br>Super. Ct. No. RG14740911)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on June 27, 2019, be modified as follows:

1.      On page 11, at the end of the partial paragraph that ends with the language "(See *Marquez, supra*, 240 Cal.App.4th at p. 104, fn. 8 [state statute governing hearing rights in connection with actions taken by counties did not apply directly to DHCS, although in that case a different provision (a regulation) made the statute applicable to some DHCS actions].)," the following language shall be added:

> As noted, DHCS raised this issue in its appellate briefs, and the only response from plaintiffs was a selective quotation of the regulatory language that omits the phrase "[t]he county department." (See Respondents' Brief at p. 30 ["[State regulation 50177] is equally specific, requiring that *DHCS* 'shall complete the determination of eligibility . . . as quickly as possible but not later than . . . [f]orty-five days . . .' "], italics added.)

1

2. At the end of footnote 11, which begins on page 17, the following new paragraph shall be added:

> On rehearing, plaintiffs shifted ground, arguing DHCS (not the Legislature) suspended the performance standards in 2015–2016. We are aware of no authority under which an administrative agency can suspend a statutory obligation. Whatever DHCS suspended in the letter cited by plaintiffs on this point—presumably either the agency's own self-certification requirements for counties (the focus of the letter) or the funding-reduction sanction noted above—it had to be something that was within its scope of authority.

3. At the end of footnote 13, which begins on page 19 with the words "As noted," language shall be added so the modified footnote reads as follows:

> [13] As noted, the court also ordered that, "[a]s an alternate means of complying with" the legal duty to issue eligibility determinations within 45 days, DHCS "may" provide provisional benefits to applicants who are likely eligible for benefits and a notice of hearing rights to other applicants. Since we reverse on the ground that, on this record, state law does not impose on DHCS a duty enforceable in mandate to determine eligibility within 45 days, we need not address the parties' appellate arguments as to the propriety of the court's specification of "alternate" means of complying with that duty, including their arguments as to whether state constitutional, statutory or regulatory provisions support the portion of the alternate compliance provision pertaining to notice. On rehearing, plaintiffs contend there is a legal basis for a purported notice obligation independent of the 45-day deadline on which the writ relief they obtained is based. We know of no legal authority that imposes on an agency a clear, ministerial duty to provide notice of *inaction* as opposed to action. (See Cal. Code Regs., tit. 22, § 50179, subds. (a), (c) [requiring county department to notify Medi-Cal beneficiary of an eligibility determination by providing a written "Notice of Action"]; *id.*, § 50177, subd. (c) ["The determination of eligibility shall be considered complete on the date the Notice of Action is mailed to the applicant."]; *Marquez*, *supra*, 240 Cal.App.4th at p. 110 ["A notice of action is required only to inform the beneficiary of 'Medi-Cal-only *eligibility or ineligibility*, and of any changes made in their *eligibility* status or share of cost.' "].) Plaintiffs cite to a statute and a regulation giving parties aggrieved by administrative delay an opportunity to request an administrative hearing (§ 10950, subd. (a); see Cal. Code Regs., tit. 22, § 50951),

but the alternative form of relief they seek here is not enforcement of a right to a hearing. (See *Marquez, supra*, 240 Cal.App.4th at p. 111, fn. 11 ["Section 10950 and regulation 50951 refer to a hearing, not notice."].) To the extent an applicant is aggrieved by delay beyond 45 days, nothing precludes him or her from seeking an administrative hearing and judicial redress. (See fn. 12, *ante*.)

There is no change in the judgment.

Respondents' petition for rehearing is denied.

Dated: _____          _____ P. J.

A147534

3

A147534/*Rivera v. Kent*

Trial Court:          Alameda County Superior Court

Trial Judge:          Hon. Evelio M. Grillo

Counsel:

Kamala D. Harris and Xavier Becerra, Attorneys General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Susan M. Carson, Supervising Deputy Attorney General, Hadara R. Stanton, Deputy Attorney General for Defendants and Appellants.

Bay Area Legal Aid, Michael Keys; Western Center on Law and Poverty, Jennifer Flory, Mona Tawatao, Richard Rothschild; Multiform Advocacy Solutions, Lucy Quacinella; Central California Legal Services, Inc., Carmen Romero; Neighborhood Legal Services of Los Angeles County, David Kane, Michelle Kezirian; National Health Law Program, Kimberly Lewis, and Corilee Racela for Plaintiffs and Respondents.

Filed 6/27/19 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FRANCES RIVERA et al., <br><br>     Plaintiffs and Respondents, <br><br>v. <br><br>JENNIFER KENT, as Director, etc., et al., <br><br>     Defendants and Appellants. | A147534 <br><br> (Alameda County <br> Super. Ct. No. RG14740911) |

Several applicants for benefits under the Medi-Cal program and an advocacy organization working on their behalf (plaintiffs) petitioned the trial court for a writ of mandate compelling the California Department of Health Care Services (DHCS) to make Medi-Cal eligibility determinations within 45 days of the application date, as well as other relief. The court granted the petition in part, ordering DHCS to make Medi-Cal eligibility determinations within 45 days unless certain exceptions applied. DHCS appealed, and enforcement of the judgment has been stayed during the pendency of the appeal.

On appeal, DHCS argues principally that (1) the court should have abstained from deciding the case due to DHCS's ongoing efforts in conjunction with federal officials to reduce delays in the processing of Medi-Cal applications, and (2) no legal authority imposes a duty on DHCS to perform as the trial court directed. We conclude the court did not abuse its discretion by declining to abstain and addressing the merits of the dispute. We also conclude, however, that the provisions of California law relied on by the plaintiffs and by the trial court do not impose on DHCS a duty to make all Medi-Cal eligibility determinations within 45 days. We will therefore reverse the judgment.

1

The statutory interpretation issues presented here are highly complex, but boil down to whether 42 Code of Federal Regulations part 435.912 (federal regulation 435.912), as incorporated into California law by cross-reference in Welfare and Institutions Code[1] section 15926, subdivision (f)(5), imposes on DHCS an obligation that is sufficiently clear and plain to be enforceable by writ of mandate. We believe there is an obligation to determine eligibility for Medi-Cal applicants within 45 days under federal regulation 435.912(c)(3)(ii), but that obligation is subject to exceptions. Although the trial court addressed these exceptions by incorporating them expressly into its writ, we think the exceptions bear on more than the scope of writ relief. In our view, they demonstrate that the underlying obligation is not sufficiently clear and plain to be enforceable in mandate at all.

We do agree with the trial court that the 45-day deadline set forth in federal regulation 435.912(c)(3)(ii) is not merely precatory, and that Medi-Cal applicants who face indefinite delays are not remediless. But in resolving the issues presented, we must focus on the overall statutory and regulatory scheme, not just on federal regulation 435.912(c)(3)(ii) in isolation. Read as a whole, in our view, the governing statutes and regulations prevent DHCS from invoking exceptions to the 45-day rule so frequently that, in the aggregate, the deadline is missed in more than 10 percent of all cases (in other words, DHCS must ensure that completed applications are resolved within 45 days 90 percent of the time). The record sheds no light on whether, at the time this case arose, or at the time the writ issued, DHCS was out of compliance with this overall performance benchmark. What we hold here is that, absent such evidence, it was error to issue writ relief applicable across-the-board for every applicant.

## I. BACKGROUND

### A. The Statutory Framework

"Medi–Cal is California's program under the joint federal-state program known as Medicaid. (Welf. & Inst. Code, § 14000 et seq.) Medicaid provides federal financial

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

assistance to participating states to support the provision of health care services to certain categories of low-income individuals and families, including the aged, blind, and disabled, as well as pregnant women and others. (42 U.S.C. § 1396 et seq.)

"Because California has opted to participate in the Medicaid program and receive federal matching funds, it must comply with all federal Medicaid requirements. [Citation.] Among other things, the state must administer its Medicaid program through a plan that has been approved by the federal Centers for Medicare and Medicaid Services (CMS). (See 42 U.S.C. § 1396a; 42 C.F.R. §§ 430.10, 430.15(b) []; Welf. & Inst. Code, § 14100.1.)" (*Marquez v. State Dept. of Health Care Services* (2015) 240 Cal.App.4th 87, 93–94 (*Marquez*).)

Medi–Cal is administered by DHCS. (See § 14100.1; 42 U.S.C. § 1396a(a)(5); *Marquez, supra,* 240 Cal.App.4th at p. 94.) In general, counties are responsible for determining initial and ongoing Medi-Cal eligibility in accordance with applicable regulations. (§ 14015.5, subd. (c); Cal. Code Regs., tit. 22, §§ 50005, subd. (c), 50101, subd. (a)(1).)

**B.     The Backlog in Making Medi-Cal Eligibility Determinations**

The evidence presented in the trial court showed that, beginning in late 2013 and early 2014, there were delays in the determination of applications for Medi-Cal benefits. Evidence submitted by plaintiffs showed that, in some cases, delays in determining eligibility had severe consequences for applicants who did not obtain needed medical care.

DHCS submitted evidence that multiple factors contributed to the delays, including (1) the filing of an unexpectedly large volume of applications in late 2013 and early 2014 (particularly in March and April 2014), in connection with the implementation of the federal Patient Protection and Affordable Care Act (ACA) (Pub. L. No. 111-148 (Mar. 23, 2010) 124 Stat. 119), which both expanded eligibility for Medicaid/Medi-Cal and changed the method for determining eligibility for many applicants, (2) technology issues associated with the quick design and launch (also in connection with the changed methods of determining eligibility under the ACA) of an automated eligibility system, the

3

California Healthcare Eligibility, Enrollment, and Retention System (CalHEERS), including the electronic health information transfer interface (eHIT) between CalHEERS and preexisting county-based automated eligibility systems, and (3) a large number of duplicate applications and data entry errors.

By March 2014, there were 900,000 applications for Medi-Cal benefits that had not been resolved. This total fell to 600,000 by June 2014, to 350,000 by September 2014, to about 134,000 by November 2014, and to about 100,000 by December 2014. The trial court found that, after plaintiffs filed the present action in September 2014, a reduction in the backlog occurred as a result of DHCS's providing provisional benefits and certain notices to applicants.

DHCS submitted evidence that it sought to reduce the backlog by working with counties, technology vendors and advocates to identify causes for the delays and implement solutions and workarounds. DHCS also worked with CMS, the federal agency responsible for overseeing the Medicaid program. DHCS kept CMS apprised of its efforts to resolve the backlog and submitted a mitigation plan to CMS. At different stages in this process, DHCS, with CMS's approval, implemented a practice (known in its later phases as "accelerated enrollment") of issuing temporary provisional benefits to some applicants pending a final determination of their eligibility. DHCS apparently applied this policy to individuals who applied for benefits between November 15, 2014 and July 30, 2015.

## C.     The Present Action

Plaintiffs are applicants for Medi-Cal and a nonprofit organization that assists people in applying for Medi-Cal as well as providing other services. They filed a petition for a writ of ordinary mandate under Code of Civil Procedure section 1085 in September 2014. The petition contends that, under California law, DHCS and its director have legal duties to (1) grant Medi-Cal benefits to otherwise eligible applicants pending verification of their income (First and Fifth Causes of Action), (2) make Medi-Cal eligibility determinations within 45 days of the application date (Second and Fifth Causes of Action), and (3) provide Medi-Cal applicants whose applications are delayed with notice

4

that they may challenge the delay at an administrative hearing (Third, Fourth and Fifth Causes of Action). The petition requested issuance of a writ of mandate compelling DHCS to comply with these duties. The petition did not seek certification of a plaintiff class.

Plaintiffs moved for a preliminary injunction in October 2014. After receiving briefing and holding a hearing over several days, the trial court granted the motion in part in January 2015. As we discuss further below, the court concluded DHCS had a duty under California law (partly through its incorporation of federal regulation 435.912) to determine applicants' eligibility for Medi-Cal within a 45-day "timeliness standard[]." The court ordered DHCS to determine eligibility for Medi-Cal applications not based on disability within 45 days from the date of the application. The court also ordered that, in cases where this deadline was not met, DHCS could comply with the preliminary injunction by (1) issuing provisional benefits to applicants who appear likely to be eligible, and (2) issuing a notice of hearing rights to other applicants.

In March 2015, plaintiffs filed a motion for a writ of ordinary mandate under Code of Civil Procedure section 1085. After further briefing and a hearing, the court granted the motion in part in August 2015. The court again determined DHCS has a duty to issue Medi-Cal eligibility determinations (for applications not based on disability) within 45 days of receipt of an application for benefits. The court also held (as it had in connection with the preliminary injunction motion) that DHCS has a duty to issue notice to applicants of the right to request an administrative hearing if eligibility is not determined within 45 days. The court denied plaintiffs' request for a writ requiring DHCS to provide provisional or temporary benefits pending determination of eligibility.

In a judgment entered in December 2015 and an amended writ of mandate issued in January 2016, the court ordered DHCS to issue an eligibility determination for each Medi-Cal application not based on disability within 45 days of receipt of the application, unless certain exceptions specified in federal or state regulations applied. The court also ordered that, "[a]s an alternate means of complying with" the legal duty to issue eligibility determinations within 45 days, DHCS "may" provide provisional benefits to

applicants who are likely eligible for benefits and a notice of hearing rights to other applicants.[2]  DHCS appealed.[3]  The judgment and writ have been stayed pending appeal, and in May 2016 the trial court denied a motion by plaintiffs to enforce the writ.

## II.  DISCUSSION

### A.    Abstention

DHCS contends the trial court should have abstained from deciding the claims presented by plaintiffs in their petition for a writ of mandate.  Trial courts have "discretion to abstain from providing equitable relief, such as restitution and injunctions, in cases requiring them to assume or interfere with an administrative agency's function or to take on an unnecessary burden in monitoring or enforcing injunctive relief, where other, more effective remedies exist."  (*Shuts v. Covenant Holdco LLC* (2012) 208 Cal.App.4th 609, 618.)  "Courts may also abstain when federal enforcement of the subject law would be ' "more orderly, more effectual, less burdensome to the affected interests." ' "  (*Alvarado v. Selma Convalescent Hospital* (2007) 153 Cal.App.4th 1292, 1298.)

DHCS argues abstention (or "defer[ence]" to CMS) was appropriate here because CMS was actively exercising its oversight responsibilities over the Medi-Cal program, and DHCS was working closely with CMS to achieve substantial compliance with the 45-day timeliness standard.  DHCS relies principally on *Acosta v. Brown* (2013) 213 Cal.App.4th 234, 237–238 (*Acosta*), in which Division Two of this court affirmed a trial court's decision to abstain from issuing a writ of mandate directing state officials to

---

[2] Specifically, the court ordered that, as an alternate means of complying with the duty to issue eligibility determinations within 45 days, DHCS may "(a) provide provisional benefits to those applicants who are likely eligible for Medi-Cal benefits and whose applications have not received an eligibility determination within 45 days until those applications have received an eligibility determination; and [¶] (b) for applicants not included under (a), issue a Notice of Information (NOI) advising those applicants of their right to request a state fair hearing where an eligibility determination will not be issued within 45 days.  The NOI shall include a statement of the specific reason or reasons why the application has not been decided within 45 days."

[3] Plaintiffs filed a cross-appeal but later dismissed it.

6

ensure unemployment insurance benefits were provided within the time periods required by federal regulations.

While there is some force to this argument, we do not believe the trial court abused its discretion in deciding not to abstain from granting the relief at issue here. (See *Acosta, supra,* 213 Cal.App.4th at p. 244 [decision whether to abstain is reviewed for abuse of discretion].) In its order granting the writ of mandate, the court carefully analyzed the question whether abstention was appropriate. The court acknowledged CMS's involvement and its approval of a mitigation plan submitted by DHCS to address the backlog. But the court concluded in part that, while it should defer to CMS "on such details as addressing the reasons for the backlog," it was still appropriate for the court to "address [DHCS's] failure to comply with the law." The court was concerned that being too quick to abstain in this situation would result in there being no remedy available "any time a state agency working with a federal agency violated the law[.]"

The court also emphasized the type of relief sought by plaintiffs, stating that, "[a]t this point," plaintiffs were "not asking the court to replicate the administrative responsibilities imposed by law on CMS to determine the reasons for the backlog, but rather simply to order [DHCS] to comply with its ministerial duty." Finally, the trial court distinguished *Acosta* on the ground that, in that case, it appeared the state officials had no ability to comply with the applicable timeliness standards within the timeframe demanded by the plaintiffs there. (See *Acosta, supra,* 213 Cal.App.4th at pp. 242–243, 257.) In contrast, the trial court here found DHCS "has at least some control over reducing the backlog of applications." The court stated that, in these circumstances, it would exercise discretion to decline to abstain from ruling on the issues presented by plaintiffs and would issue a writ of mandate compelling DHCS to comply with its statutory duties.

In light of the court's framing of the issues presented and its ultimate order, which directs DHCS to comply with what the court found to be a ministerial duty (i.e., to determine eligibility within 45 days) but does not dictate the steps DHCS should take to achieve that end or otherwise seek to exercise an oversight role akin to that of CMS, we

7

conclude the court did not abuse its discretion by declining to abstain. Determining whether applicable statutory or regulatory provisions impose a ministerial duty on DHCS supporting issuance of a writ of mandate is generally an appropriate function for the courts. (See *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 499–500 [abstention was not appropriate where resolution of claim required court to interpret relevant statutory provisions, rather than requiring individualized determinations of factual issues as to each putative class member].) In the context of the Medicaid program, California appellate courts have addressed whether federal or state law imposes ministerial duties enforceable by writ of mandate. (See *Santa Rosa Memorial Hospital, Inc. v. Kent* (2018) 25 Cal.App.5th 811, 819; *Marquez, supra,* 240 Cal.App.4th at p. 93.)

Since we find the court did not abuse its discretion in declining to abstain, we turn next to the question whether the court correctly found DHCS had a ministerial duty to make eligibility determinations within 45 days.

**B.      Claimed Ministerial Duty to Make Eligibility Determinations in 45 Days**

To obtain a writ of mandate under Code of Civil Procedure section 1085, a petitioner must establish " ' "(1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]." ' " (*Armando D. v. State Department of Health Services* (2004) 124 Cal.App.4th 13, 22 (*Armando D.*); see *Marquez, supra,* 240 Cal.App.4th at p. 103.) When reviewing a trial court's decision on a petition for a writ of mandate, we apply de novo review to determine questions of law, including questions of statutory interpretation. (*Armando D., supra,* 124 Cal.App.4th at p. 21.)

In the trial court and on appeal, plaintiffs' position has been that California state statutes and regulations (either directly or by incorporating federal regulation 435.912(c)(3)(ii)) impose on DHCS a ministerial duty to ensure all non-disability Medi-Cal eligibility determinations are completed within 45 days. The trial court adopted this view, holding, in its orders granting plaintiffs' motions for preliminary injunctive relief and for a writ of mandate, that California law (directly and by incorporation of the federal

8

regulation) imposes a ministerial duty to complete eligibility determinations within 45 days, unless certain exceptions set forth in the federal and state regulations apply.[4]  We conclude none of the provisions of California law relied on by plaintiffs and by the trial court imposes a clear, ministerial duty on DHCS that supports the court's order.

### 1.  Section 10000

In their petition for a writ of mandate filed in the trial court, plaintiffs cited section 10000 as one basis for their Second Cause of Action, the claim asserting DHCS has a duty to determine eligibility for Medi-Cal in 45 days, and the trial court cited this provision in its judgment.  Section 10000 states in part that "aid shall be administered and services provided promptly and humanely."  But this statute "sets forth only a 'general statement of policy.'  [Citations.]  It does not set forth any specific duty or course of conduct an agency must take, but leaves to the agency's discretion how to pursue the policy goal." (*Marquez, supra,* 240 Cal.App.4th at p. 120.)  Section 10000 does not impose on DHCS a ministerial duty to determine Medi-Cal eligibility within a certain timeframe.

### 2.  California Code of Regulations, Title 22, Section 50177

The other provision of California law cited by plaintiffs in support of the Second Cause of Action in their writ petition is California Code of Regulations, title 22, section 50177 (state regulation 50177), a provision the trial court also relied on in part in issuing the writ.  State regulation 50177 addresses the responsibilities of *counties* in determining eligibility for Medi-Cal.  Subdivision (a) of the regulation states:  "*The county department* shall complete the determination of eligibility and share of cost as quickly as possible but not later than any of the following:  [¶] (1) Forty-five days

---

[4] Plaintiffs did not assert in their writ petition a claim relying directly on federal law governing timely determination of Medicaid eligibility.  (See 42 U.S.C. § 1396a(a)(8) [a state Medicaid plan must provide that "medical assistance . . . shall be furnished with reasonable promptness to all eligible individuals"]; 42 C.F.R. § 435.912(a), (b)(1), (c)(3), (e) [state plan must include "timeliness and performance standards" for determining Medicaid eligibility; except in "unusual circumstances," the time for determination of eligibility shall not exceed 45 days for applicants not applying on the basis of disability].)

following the date the application, reapplication or request for restoration is filed. [¶] (2) Ninety days following the date the application, reapplication or request for restoration is filed when eligibility depends on establishing disability or blindness."[5] (Italics added.)

Subdivision (b) of state regulation 50177 provides for extensions of these timeframes, including when there has been a delay in the receipt of information necessary to determine eligibility, but continues to focus on the responsibilities of counties in connection with that task. Subdivision (b) states: "The 45- and 90-day periods may be extended for any of the following reasons: [¶] (1) The applicant, the applicant's guardian, or other person acting on the applicant's behalf, has for good cause, been unable to return the completed Statement of Facts, Supplement to Statement of Facts for Retroactive Coverage/Restoration, or necessary verification in time for *the county department* to meet the promptness requirement. [¶] (2) There has been a delay in the receipt of reports and information necessary to determine eligibility and the delay is beyond the control of either the applicant or *the county department*." (Italics added.)

The parties disagree as to the scope of the obligations imposed by state regulation 50177, including (1) whether it requires that eligibility always be determined within 45 days (or whether substantial compliance with that standard is sufficient), and (2) whether the extensions of time referred to in the regulation apply in the present case. We need not address these questions, because it is clear from the text of state regulation 50177 that any obligation it imposes is directed to *counties* performing eligibility determinations (a point stressed by DHCS in its appellate briefs).[6] The regulation does not impose a clear duty *on DHCS* to complete eligibility determinations within a specified timeframe in every case (or in every case in which the extensions set forth in the regulation do not apply). (See *Marquez*, *supra*, 240 Cal.App.4th at p. 104, fn. 8 [state statute governing hearing

---

[5] The 90-day period for determining eligibility based on disability is not at issue in this appeal.

[6] Plaintiffs brought suit (and sought writ relief) only against DHCS and its director, not against any counties or county departments.

10

rights in connection with actions taken by counties did not apply directly to DHCS, although in that case a different provision (a regulation) made the statute applicable to some DHCS actions].)

The trial court acknowledged state regulation 50177 "applies to counties." But the court stated: "[T]he court nevertheless finds that both [state regulation 50177] and [federal regulation 435.912] were intended to require eligibility determinations on Medi-Cal applications to be made within 45 days, unless there existed 'unusual circumstances' beyond the applicant's, the county's or [DHCS's] control." Even assuming this is a reasonable conclusion as to the overall objective sought to be achieved by the regulatory provisions at issue, we cannot conclude that regulation 50177, which is directed expressly and exclusively to the obligations of counties, imposes on DHCS a clear, ministerial duty, enforceable by writ of mandate, to complete all Medi-Cal eligibility determinations statewide within a specified timeframe.

### 3.     Section 15926, Subdivision (f)(5)

In their writ petition filed in the trial court, plaintiffs cited only section 10000 and state regulation 50177 as the legal bases for their claim that DHCS has a duty to determine eligibility for Medi-Cal in 45 days. The trial court, however, ultimately relied in part on section 15926, subdivision (f)(5) as a basis for this duty, because, the court concluded, that provision incorporates the timeliness standards set forth in federal regulation 435.912.[7] In their appellate brief, plaintiffs similarly argue section 15926, subdivision (f)(5) incorporates into California law a 45-day deadline established by federal regulation 435.912(c)(3)(ii).[8]

---

[7] In their writ petition in the trial court, while not relying on section 15926, subdivision (f)(5) as a basis for DHCS's duty to determine eligibility within 45 days, plaintiffs did cite that provision in support of one of their other claims, the First Cause of Action, which asserted DHCS has a duty to grant Medi-Cal benefits to otherwise eligible applicants pending verification of their income. The trial court did not grant relief on that claim.

[8] This provision originally appeared in a differently numbered regulation, 42 Code of Federal Regulations part 435.911(a)(2). (See 44 Fed.Reg. 17926, 17937–17938

11

We disagree.  Although it does refer to federal regulation 435.912's timeliness standards, section 15926, subdivision (f)(5) does not in our view incorporate into California state statutory law a requirement that DHCS complete all non-disability Medi-Cal eligibility determinations in 45 days.

Section 15926 appears in Part 3.8 of Division 9 of the Welfare and Institutions Code.  Part 3.8 is the "Health Care Reform Eligibility, Enrollment, and Retention Planning Act," a 2011 enactment that (for the most part) became operative in 2014 and requires the state to develop "standardized single, accessible application forms and related renewal procedures for state health subsidy programs."[9]  (Legis. Counsel's Dig., Assem. Bill No. 1296 (2011–2012 Reg. Sess.) Stats. 2011, ch. 641, Summary Dig.; see § 15925, subd. (a).)  Section 15926 includes requirements for the forms and procedures to be used in connection with applications for "insurance affordability programs," a term defined in the statute to include Medi-Cal and other programs.  (§ 15926, subds. (a)(3), (b), (c), (e), (f), (g), (h), (j), (k).)

Subdivision (f) of section 15926 addresses various matters, including prepopulation of application forms, the permissive use of self-attestation in some circumstances, and a requirement that an applicant be given an opportunity to correct or supplement information before an eligibility determination is made.  (§ 15926, subd. (f)(1), (2), (4).)  Subdivision (f)(5), the provision at issue here, also governs an aspect of the benefit application process, requiring that an applicant be given an opportunity to resolve certain "discrepancies" in the information provided in connection with his or her application.  Subdivision (f)(5) states:  "The eligibility of an applicant shall not be delayed beyond the timeliness standards as provided in Section 435.912 of Title 42 of the Code of Federal Regulations or denied for any insurance affordability

---

(March 23,1979).)  After the ACA, it became federal regulation 435.912(c)(3)(ii).  (See 77 Fed.Reg. 17144, 17209–17210 (March 23, 2012) (Interim Final Rule) and 78 Fed.Reg. 42160 (July 15, 2013) (Final Rule).)

[9] A different portion of the Welfare and Institutions Code—Chapter 7 of Part 3 of Division 9—is entitled the "Medi-Cal Act."  (§ 14000.4.)

program *unless* the applicant is given a *reasonable opportunity*, of at least the kind provided for under the Medi-Cal program pursuant to Section 14007.5 and paragraph (7) of subdivision (e) of Section 14011.2, to *resolve discrepancies* concerning any information provided by a verifying entity."  (§ 15926, subd. (f)(5), italics added.)

In turn, the state statutes cited in section 15926, subdivision (f)(5)— sections 14007.5 and 14011.2—direct that Medi-Cal applicants who meet other program requirements but who lack specified items (documentation of immigration status and citizenship, respectively) be given a reasonable opportunity to submit those items.  (See §§ 14007.5, subd. (f)(2)–(3), 14011.2, subd. (e)(5), (7).)  As we read it, section 15926, subdivision (f)(5) extends this requirement beyond the categories of immigration and citizenship documentation, directing that a similar "reasonable opportunity" be provided to an applicant for an insurance affordability program (including Medi-Cal) "to resolve discrepancies concerning any information provided by a verifying entity."  The eligibility of an applicant shall not be "delayed beyond the timeliness standards" in federal regulation 435.912 or "denied" unless such a reasonable opportunity is provided. (§ 15926, subd. (f)(5).)

We do not read section 15926, subdivision (f)(5)'s requirement that applicants be given an opportunity to resolve certain discrepancies as a mandate that DHCS ensure statewide compliance with federal regulation 435.912's timeliness standard in all circumstances.  Instead, section 15926, subdivision (f)(5) presupposes that in some cases there will be delay beyond the timeline established by federal regulation 435.912, due to "discrepancies concerning any information provided by a verifying entity."  Section 15926, subdivision (f)(5) requires that where such delay occurs, the applicant must be "given a reasonable opportunity" to resolve the discrepancies.  It does not say DHCS must in all cases work within a 45-day timeframe.  At best for plaintiffs, section 15926, subdivision (f)(5) is ambiguous as to whether it imposes any timeliness requirement in situations where a delay is not related to the need to resolve the specified type of "discrepancies."

13

Moreover, even assuming the 45-day timeframe established by federal regulation 435.912(c)(3)(ii) applies uniformly to all cases other than those involving "discrepancies," the "discrepancies" exception is not the exclusive basis for going beyond 45 days. If delay arises from other causes, it may be justified by "unusual circumstances," which is a broad catchall that appears near the end of a series of provisions within the overall structure of federal regulation 435.912. (See 42 C.F.R. § 435.912(e).)[10] The term "unusual circumstances" is defined illustratively in federal

<hr/>

[10] Federal regulation 435.912(a)–(e) provides, in pertinent part:

"(a) For purposes of this section--

   (1) 'Timeliness standards' refer to the maximum period of time in which every applicant is entitled to a determination of eligibility, subject to the exceptions in paragraph (e) of this section.

   (2) 'Performance standards' are overall standards for determining eligibility in an efficient and timely manner across a pool of applicants, and include standards for accuracy and consumer satisfaction, but do not include standards for an individual applicant's determination of eligibility.

(b) Consistent with guidance issued by the Secretary, the agency must establish in its State plan timeliness and performance standards for, promptly and without undue delay . . . .

(c)

   (1) The timeliness and performance standards adopted by the agency . . . must comply with the requirements of paragraph (c)(2) of this section . . . .

   (2) Timeliness and performance standards included in the State plan must account for--

      (i) The capabilities and cost of generally available systems and technologies;

      (ii) The general availability of electronic data matching and ease of connections to electronic sources of authoritative information to determine and verify eligibility;

      (iii) The demonstrated performance and timeliness experience of State Medicaid, CHIP and other insurance affordability programs, as reflected in data reported to the Secretary or otherwise available; and

      (iv) The needs of applicants, including applicant preferences for mode of application (such as through an internet Web site, telephone, mail, in-person, or other commonly available electronic means), as well as the relative complexity of

14

regulation 435.912(e) by reference to two examples of circumstances not within the agency's control (42 C.F.R. § 435.912(e)(1), (2)), but beyond that is open-ended. In our view, therefore, not only does section 15926, subdivision (f)(5) fail to impose on DHCS a "clear" duty in all cases to make Medi-Cal eligibility determinations within the timeframe set forth in federal regulation 435.912, but the federal regulation itself lacks the clarity necessary to impose an across-the-board requirement for eligibility determinations within 45 days. (See *Armando D., supra,* 124 Cal.App.4th at p. 22 [to obtain a writ of mandate, the petitioner must establish a " ' "clear, present and usually ministerial duty upon the part of the respondent" ' "].)

In reaching this conclusion, we are mindful that both federal and California law differentiate between (1) the 45-day standard for determining an individual's eligibility, and (2) the obligation of an agency to process the overall pool of applications in a timely fashion. Federal regulation 435.912 requires a state Medicaid plan to include both " '[t]imeliness standards' " (which pertain to the determination of an individual applicant's eligibility) and " '[p]erformance standards' " (which measure timely

---

adjudicating the eligibility determination based on household, income or other relevant information.

(3) Except as provided in paragraph (e) of this section, the determination of eligibility for any applicant may not exceed--

(i) Ninety days for applicants who apply for Medicaid on the basis of disability; and

(ii) Forty-five days for all other applicants.

(d) The agency must inform applicants of the timeliness standards adopted in accordance with this section.

(e) The agency must determine eligibility within the standards except in unusual circumstances, for example--

(1) When the agency cannot reach a decision because the applicant or an examining physician delays or fails to take a required action, or

(2) When there is an administrative or other emergency beyond the agency's control."

eligibility determination "across a pool of applicants"). (42 C.F.R. § 435.912(a)(1)–(2), (b).) Specifically, federal regulation 435.912(a)(1) states: " 'Timeliness standards' refer to the maximum period of time in which every applicant is entitled to a determination of eligibility, subject to the exceptions in paragraph (e) of this section [i.e., when 'unusual circumstances' exist]." In contrast, under federal regulation 435.912(a)(2), " '[p]erformance standards' are overall standards for determining eligibility in an efficient and timely manner across a pool of applicants, and include standards for accuracy and consumer satisfaction, but do not include standards for an individual applicant's determination of eligibility."

California law similarly distinguishes between (1) the timeframe applicable to the processing of an individual application, and (2) broader "performance standards" that focus on the overall goal of substantial compliance with that timeframe across a pool of applicants. As noted, subdivisions (a)(1) and (b) of state regulation 50177 provide that county departments must determine eligibility for non-disability Medi-Cal applicants within 45 days, subject to extensions of that timeframe for specified reasons. But California statutory law recognizes counties may not be able to do so in 100 percent of cases. Section 14154, subdivision (d) states DHCS "is responsible for the Medi-Cal program in accordance with state and federal law," and "[a] county shall determine Medi-Cal eligibility in accordance with state and federal law." The subdivision goes on to state: "In administering the Medi-Cal eligibility process, each county shall meet the following *performance standards* each fiscal year: [¶] (1) Complete eligibility determinations as follows: [¶] (A) *Ninety percent* of the general applications without applicant errors and are complete *shall be completed within 45 days*. [¶] (B) Ninety percent of the applications for Medi-Cal based on disability shall be completed within 90 days, excluding delays by the state." (§ 14154, subd. (d)(1), italics added.) If a county

16

does not meet these performance standards, DHCS may reduce the allocation of funds to the county. (*Id.*, subds. (g), (h).)[11]

Especially in light of these parallel timeliness and performance standards, we are not persuaded that federal or California law supports an order requiring DHCS (or the counties, for that matter) to complete *all* non-disability Medi-Cal eligibility determinations within the 45-day timeframe specified in federal regulation 435.912 and state regulation 50177, at least not in a way that is susceptible to determination across-the-board without case-by-case evaluation of any exceptions justifying delay. Such an order, in effect, conflates the 45-day timeliness standard applicable to determining an individual applicant's eligibility with the performance standards an agency must strive to meet across the overall pool of applicants (e.g., the 90 percent target specified in § 14154, subd. (d)(1)(A)). If we were to hold that an agency must actually meet the 45-day

---

[11] At oral argument, plaintiffs' counsel stated the Legislature has "suspended" the California performance standards for every year from 2008 through 2018. We see no support for this representation in the governing law. Under section 14154, subdivision (h), DHCS may reduce funding to a county that does not meet the performance standards (§ 14154, subd. (h)(1)), but such a reduction cannot be imposed during a period in which the "cost-of-doing-business increase" is suspended (*id.*, subd. (h)(2)). In turn, the "cost-of-doing-business increase" is described in subdivision (c), which states that (1) counties need "adjustments for reasonable annual cost-of-doing business increases" (§ 14154, subd. (c)(1)), but (2) the Legislature does *not* intend to appropriate funds for the "cost-of-doing-business adjustment" for most of the years from 2008 to 2018, specifically "the 2008–09, 2009–10, 2010–11, 2011–12, 2012–13, 2014–15, 2015–16, 2016–17, and 2017–18 fiscal years" (*id.*, subd. (c)(2)).

It thus appears that in each of the listed fiscal years, the counties did not receive the "cost-of-doing business increases" described in section 14154, subdivision (c), so during those periods, DHCS could not impose the funding-reduction sanction authorized by section 14154, subdivision (h). But neither subdivision (c) nor subdivision (h) purports to modify the statutory performance standards set forth in subdivision (d), which require counties to complete 90 percent of non-disability eligibility determinations within 45 days. (§ 14154, subd. (d)(1)(A).) We also note that, contrary to counsel's suggestion at oral argument, not every year in the 2008–2018 period is covered by subdivision (c)(2)'s non-funding of the cost-of-doing-business increase. Specifically, the 2013–2014 fiscal year is not listed, and that appears to be the period when the biggest surge of Medi-Cal applications occurred.

deadline in 100 percent of cases, there would be no significance to the requirement that the 45-day timeframe be met in 90 percent of cases. If, instead, we acknowledge and account for all the exceptions, including the open-ended exception for "unusual circumstances," we are left with no legal basis for the sort of clear and plain duty that justifies the issuance of a writ of mandate.[12]

To sum up, under the intricate statutory and regulatory scheme before us, when read as a whole—starting with section 15926, subdivision (f)(5), and then focusing on the federal regulatory scheme that is embedded into California law by cross-reference to federal regulation 435.912—the 45-day deadline the plaintiffs wish to enforce is merely a target, not an absolute requirement. We arrive at that conclusion because the 45-day deadline is subject to a variety of exceptions designed to give the agency a degree of flexibility. The freedom DHCS has to miss this 45-day target, to be sure, is not unlimited. As we interpret federal regulation 435.912, together with section 14154, and state regulation 50177, DHCS may not read the available exceptions so expansively that, by the frequency of their invocation, the 45-day deadline is blown in more than 10 percent of all cases. Ultimately, that is the significance of the performance standard. It is there to serve as a check on the DHCS's discretion, cabining the agency's ability to grant extensions so generously as to create indefinite delays.

There is no evidence in the record here to indicate whether, at the time this case was filed, or at the time the writ issued, DHCS was failing to meet the 90 percent performance standard for processing Medi-Cal applications within 45 days. In the absence of such evidence, we must conclude it was error to issue a writ of mandate enforcing the 45-day deadline across-the-board. Because of the flexibility built into the timeframe for processing Medi-Cal applications, it cannot be said that DHCS's obligation to meet the 45-day deadline, and to see that counties meet it, is sufficiently clear and

_____

[12] Of course, an individual Medi-Cal applicant may in some circumstances have a valid claim that, under federal regulation 435.912 and state regulation 50177, his or her application should be determined within the 45-day timeframe. We do not suggest that the provisions establishing overall performance standards would provide a defense to such an individual claim.

18

plain to be enforceable by writ of mandate in all cases. If, on this record, the proof showed the 90 percent performance standard was not being met during the years in question, leaving countless Medi-Cal applicants uninsured and in a state of limbo, we would have a different case. But that is not the case the plaintiffs brought, and it is not the case they proved up.[13]

## III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to enter a judgment denying the petition for a writ of mandate. The parties shall bear their own costs on appeal.

---

[13] As noted, the court also ordered that, "[a]s an alternate means of complying with" the legal duty to issue eligibility determinations within 45 days, DHCS "may" provide provisional benefits to applicants who are likely eligible for benefits and a notice of hearing rights to other applicants. Since we reverse on the ground that, on this record, state law does not impose on DHCS a duty enforceable in mandate to determine eligibility within 45 days, we need not address the parties' appellate arguments as to the propriety of the court's specification of "alternate" means of complying with that duty, including their arguments as to whether state constitutional, statutory or regulatory provisions support the portion of the alternate compliance provision pertaining to notice.

19

_____

STREETER, J.

We concur:


_____

POLLAK, P.J.


_____

TUCHER, J.


A147534

Trial Court:

Trial Judge:

Counsel:

Kamala D. Harris and Xavier Becerra, Attorneys General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Susan M. Carson, Supervising Deputy Attorney General, Hadara R. Stanton, Deputy Attorney General for Defendants and Appellants.

Bay Area Legal Aid, Michael Keys; Western Center on Law and Poverty, Jennifer Flory, Mona Tawatao, Richard Rothschild; Multiform Advocacy Solutions, Lucy Quacinella; Central California Legal Services, Inc., Carmen Romero; Neighborhood Legal Services of Los Angeles County, David Kane, Michelle Kezirian; National Health Law Program, Kimberly Lewis, and Corilee Racela for Plaintiffs and Respondents.