Filed 3/23/21  Vaccaro v. Systellex, Inc. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MILAGRO VACCARO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SYSTELLEX, INC. et al.,<br><br>    Defendants and Appellants. | G059227<br><br>(Super. Ct. No. 30-2018-00968510)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Charles Margines, Judge.  Affirmed.

Michael Maguire & Associates, Paul Kevin Wood, Jennifer Leeper and Imran Khundkar for Defendants and Appellants.

Esquire One Research Services, Inc., David Finley; Kimura London & White, Joshua M. Kimura; The Lopez Law Firm and Diana Lopez for Plaintiff and Respondent.

\*        \*        \*

Defendant Muhammad Adeel Ahmed rear-ended plaintiff Milagro Vaccaro's car while driving for his employer, defendant Systellex, Inc. Plaintiff sued defendants for injuries, primarily back pain, allegedly caused by the accident. The parties stipulated that defendants were responsible for the accident and the case proceeded to trial. The jury issued a verdict for defendants, finding the accident did not cause plaintiff's injuries. Plaintiff then filed a motion for a new trial, which was granted by the trial court. The court stated that per the stipulation, defendants did not dispute that plaintiff was injured by the accident. Rather, they only contested the scope of her injuries and damages. The court then outlined the evidence showing the accident had injured plaintiff and concluded the evidence presented at trial was insufficient to justify the jury's causation finding.

Defendants appeal the order granting a new trial. First, they argue the court misinterpreted the parties' stipulation. They admitted liability only for the accident, not for any injuries claimed by plaintiff. But defendants have not shown any prejudice from this alleged error. The record shows the court's ruling was not driven by the stipulation but by the considerable evidence at trial showing that plaintiff had been harmed by the accident. Thus, the result would have been the same even absent the alleged error. Next, defendants contend the weight of the evidence supported the jury's finding. Even if this were true, the trial court had discretion to reweigh the evidence, reassess witness credibility, and draw different inferences than the jury. Defendants have not shown that the trial court's ruling was unreasonable. As such, we affirm the order.

I

FACTS

A. *The Accident*

On January 26, 2016, Ahmed rear-ended plaintiff's car while driving on behalf of his employer, Systellex (the accident). The accident was not severe. The

2

impact of the collision did not cause plaintiff to hit any part of the interior of her vehicle, and she did not feel any pain or discomfort immediately after the accident. And neither plaintiff nor the police saw any visible damage to plaintiff's vehicle at the scene. The police suggested that the parties exchange information and left. Plaintiff then drove home.

In January 2018, plaintiff filed this negligence lawsuit against defendants, claiming the accident had reaggravated a prior back injury. Before trial, the parties stipulated that Ahmed was the sole cause of the accident and that he was employed by Systellex. They also stipulated that the case involved a single controverted issue: "the nature and extent of plaintiff's injuries and damages." Trial commenced on January 22, 2020.

## B. Testimony at Trial

At trial, plaintiff testified that she had received treatment for back pain from 2007 to 2014, including pain medication, physical therapy, and use of a traction machine at home. This treatment resolved her pain, and she was asymptomatic for 22 months prior to the accident. The day after the accident, she awoke with pain in her neck, back, and legs. She saw her primary care doctor a few days later and was given pain medication. Plaintiff began receiving chiropractic treatment around March 2016, which continued for about three months. It decreased her pain, but the pain returned after she was discharged from treatment. Plaintiff testified that the pain forced her to leave her full-time job as a housekeeper at a hotel. She had to take a part-time job that was less physically demanding. She was also unable to exercise, cook or clean at home, or be intimate with her husband.

Plaintiff eventually saw Dr. Ali Najafi, a neurosurgeon, in April 2019. He was the only medical witness plaintiff called at trial. Dr. Najafi testified that a disc bulge in plaintiff's spine had been putting pressure on a nerve and causing her pain. Using

3

M.R.I. images, he showed the disc bulge was present in plaintiff's spine in 2012, and had further degenerated by 2018. He initially treated the pain with epidural injections. But after plaintiff's pain continued, he recommended back surgery, which he performed on January 11, 2020.

Dr. Najafi opined that the accident "was a substantial factor in causing [plaintiff's] need for back surgery." Although she had suffered from back pain prior to the accident and had the disc bulge since at least 2012, she had no pain for almost two years prior to the accident. Up until the accident "she was functional. She was working, she wasn't taking any pain medications, and obviously that changed from the time that she was involved in the accident." He believed plaintiff's "disc was weakened as a result of the previous wear and tear or degenerative changes and was more prone to additional trauma or injury . . . , [which] explain[ed] why her back pain started after the accident and progressed and did not improve afterwards."

Dr. Najafi further testified that without the accident, plaintiff could have been asymptomatic forever: "[if you] M.R.I. 100 people, 50 of them may have similar [M.R.I. results as plaintiff], and have no symptoms. The symptoms develop when something happens one way or the other when the area gets more irritated, or that the bulge becomes more, or the spinal canal becomes narrow or there is arthritis in the joints, and for one reason or another, you develop symptoms. In this case, she did not have any of that prior to the accident."

Defendants called as witnesses several medical professionals that had treated plaintiff. Dr. Margarita Sanchez-Padilla, plaintiff's primary care doctor, testified that plaintiff had complained of back pain as far back as 2010. Dr. John Tin treated plaintiff for leg and back pain in 2012 and 2013. Nurse Tamara Caldwell testified that plaintiff had a medical visit in 2012 for back pain. And physical therapist assistant Rocio Padilla testified that plaintiff received physical therapy for lower back and leg pain in

4

2012. Crucially, though, all these witnesses expressly admitted that they had no opinion as to whether plaintiff's recent back injury was caused by the accident.

The last treating witness defendant called to testify was Dr. Eugenia Tsai, who saw plaintiff for back pain a few days after the accident. She diagnosed the accident as the cause of plaintiff's back pain.

Defendants also called expert witness Dr. Steven Dennis, an orthopedic surgeon. Dr. Dennis reviewed plaintiff's history of prior injuries, which included car accidents in 2012 and 2014, a slip and fall accident in 2016, and the accident at issue. Similar to Dr. Najafi, he compared plaintiff's M.R.I. results from 2012 and 2018 and observed degeneration in the subject disc. He opined that while the various injuries plaintiff sustained between 2012 and 2016 may have exacerbated the degeneration, it would have occurred even without those injuries.

However, Dr. Dennis did not claim plaintiff was uninjured by the accident. To the contrary, he testified that it did injure her:

"Q: All right. And you concluded that [plaintiff] did suffer a back injury as a result of this car crash; correct?

"A: I believe she had soft tissue injuries, yes.

"Q: We agree that she suffered a back injury; correct?

"A: Yes.

[¶] . . . [¶]

"Q: All right. And I believe the word we used in her deposition was that [plaintiff] suffered a re-aggravation of lower back pain because of the January 26, 2016 car crash; correct?

"A: I'll believe you. I don't remember exactly what we said.

"Q: Would you agree with me she suffered a re-aggravation of the lower back pain from the January 26, 2016 car crash?

"A: Yes."

5

In later testimony, he again confirmed that plaintiff suffered a back injury from the accident. But he disagreed the injury required surgery:

"Q: Okay. Now, the one thing that you don't believe -- well, you believe [plaintiff] suffered a back injury as a result of the car crash; correct?

"A: Yes.

"Q: Where we disagree is whether or not she needs back surgery as a result of the car crash; right?

"A: Correct."

He also testified that the accident exacerbated the underlying degenerative changes to plaintiff's disc and caused inflammation in the muscles and the disc:

"Q: And did this accident cause any sort of aggravation to any preexisting condition that would cause her to need a fusion surgery?

"A: Not the need, but I believe the accident did exacerbate the underlying degenerative changes but not to need a fusion surgery.

"Q: And when you say exacerbate the underlying, the degenerative changes, that's a soft tissue injury you're talking about?

"A: It's an inflammatory response, yes.

[¶] . . . [¶]

"Q: And when you say inflammatory, that's the muscles; right?

"A: It's the muscles. It is also the disc. A disc creates a chemical called a prostaglandin which is the mediator of inflammation. It's what anti-inflammatory medicines like Advil and such block."

Dr. Dennis also acknowledged that plaintiff was asymptomatic for 22 months prior to the accident and stated it was possible she could have been asymptomatic forever.

Defendants also called radiologist Dr. David Karlin as an expert witness. He testified that the changes to plaintiff's disc between 2012 to 2018 were degenerative.

6

However, he had no opinion as to whether the accident caused a back injury to plaintiff, such as a "soft tissue" or "muscular injury." He clarified this was "beyond [his] scope" because he did not physically examine plaintiff. Defendants also called biomechanical engineer Bryan Randles, who likened the force of the accident to a bumper car. He testified that the accident would not have caused any structural damage to plaintiff's spine other than soft tissue injuries. Randles had no opinion as to whether the impact could have reaggravated a preexisting injury, stating he did not have the background to diagnose a medical injury.

### C. Jury Instructions and Verdict

The jury was given an instruction based on CACI No. 424, which covers uncontested negligence. The instruction stated that defendants "agree[d] that they were negligent, but den[ied] that the negligence caused [plaintiff] any harm/the full extent of the harm claimed by [plaintiff]." For plaintiff to establish her claim against defendants, she had to prove: (1) that she "was harmed," and (2) that defendants' "negligence was a substantial factor in causing [her] harm." The jury was also given an instruction based on CACI No. 430, relating to causation: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. [¶] Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct."

The jury returned a unanimous verdict in favor of defendants, finding defendants' "negligence [was not] a substantial factor in causing harm to [plaintiff]." Judgment was subsequently entered in favor of defendants and against plaintiff.

7

*D. Motion for New Trial*

Plaintiff filed a motion for a new trial.[1] After oral argument, the court issued a detailed minute order granting the motion, finding "[t]he medical evidence was insufficient to support the jury's finding as to lack of causation." (Italics omitted.) The court made four observations. First, according to the parties' stipulation, "defendants did not dispute causation. Rather, the only disputed issue listed [was]: 'Defendants dispute the nature and extent of plaintiff's injuries and damages.' [Citation.] In other words, defendants did not dispute the fact that plaintiff was in fact injured in the subject collision, but only the extent of the injuries and damages claimed by plaintiff." Second, both Dr. Tsai and Dr. Najafi testified that the accident caused plaintiff's back injuries. Third, Dr. Dennis "testified that plaintiff in fact suffered injuries as a result of the subject accident, and did not deny causation entirely." Fourth, "the other medical providers and/or medical witnesses who testified at trial did not have any opinion as to causation."

The court also noted that while there was testimony "plaintiff would have continued to undergo degenerative changes to her spine [this] does not rule out that she was injured in the subject accident. Dr. Dennis did not testify that plaintiff's physical complaints were due solely to degenerative changes. Rather, . . . Dr. Dennis testified that the subject accident caused soft tissue injuries and exacerbated plaintiff's pre-existing back condition."

The court issued a second minute order a few hours later, in which it incorporated the prior minute order and stated that "Defendants admitted liability for the collision.[2] The evidence was insufficient to support the jury's finding as to lack of causation. That evidence – from Plaintiff's as well as Defendants' witnesses – clearly

---

[1]  Plaintiff also filed a motion for judgment notwithstanding the verdict, which the trial court denied.

[2]  Since the second minute order incorporated the prior minute order, we refer to these orders together, in the singular, as "the minute order."

8

demonstrated that Plaintiff sustained injuries from the accident. The only dispute was the extent of the injuries."

Defendants appeal the order granting a new trial. They make two arguments. First, the court incorrectly interpreted the parties' stipulation by finding that defendants did not dispute causation. Though they conceded responsibility for the collision, they did not concede liability for any claimed injuries. Second, they assert the trial court abused its discretion by ignoring the considerable evidence supporting the jury's verdict. We are not persuaded by these arguments.

II

DISCUSSION

*A. Legal Standard*

A new trial may be granted if the evidence is insufficient to justify the verdict. (Code Civ. Proc., § 657, subd. (6).) Trial courts have considerable discretion in this area. "[A]n order granting a new trial under section 657 'must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court's] theory.' [Citation.] Moreover, '[a]n abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached . . . .' [Citation.] In other words, 'the presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the [new trial] order.'" (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 411-412.) The trial court "may grant the motion for new trial notwithstanding a substantial conflict in the evidence." (*Green v. County of Merced* (1944) 62 Cal.App.2d 570, 575.)

"The reason for this deference 'is that the trial court, in ruling on [a new trial] motion, sits . . . as an independent trier of fact.' [Citation.] Therefore, the trial court's factual determinations, reflected in its decision to grant the new trial, are entitled

9

to the same deference that an appellate court would ordinarily accord a jury's factual determinations." (*Lane v. Hughes Aircraft Co.*, *supra*, 22 Cal.4th at p. 412.) "A new trial motion allows a judge to disbelieve witnesses, reweigh evidence and draw reasonable inferences contrary to that of the jury, and still, on appeal, retain a presumption of correctness that will be disturbed only upon a showing of manifest and unmistakable abuse. [Citation.] Hence, . . . orders granting new trials are 'infrequently reversed.'" (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 751.)

While the trial court's order is reviewed for an abuse of discretion, the "'standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'" (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 588-589.)

*B. Analysis*

Defendants primarily contend that the trial court misinterpreted the parties' stipulation to mean that defendants did not contest causation, i.e., that the accident injured plaintiff. They assert this is a legal error that must be reviewed de novo. But even if the trial court misconstrued the stipulation, which is far from clear, this argument is unpersuasive.[3] Defendants have not shown this error was prejudicial.

"Whether legal or factual, no error warrants reversal unless the appellant can show injury from the error." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287.) Here, defendants bear the burden of showing "the error was prejudicial in

---

[3] The court's second minute order appears to clarify that defendant only "admitted liability for the collision," rather than causation, and that the court's ruling was based on the causation evidence presented at trial.

10

that it resulted in a miscarriage of justice." (*Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999.) This burden is met "only if the reviewing court concludes, based on its review of the entire record, that it is reasonably probable that the trial court would have reached a result more favorable to the appellant absent the error." (*Ibid.*)

Based on our review of the record, we find it unlikely that a different result would have been reached absent the alleged error. Even if the court misinterpreted the stipulation, this did not materially affect its ruling. The minute order clearly shows the court's decision was driven by the evidence presented at trial, not the stipulation. The court expressly found the medical evidence presented at trial "was insufficient to support the jury's finding as to lack of causation." (Italics omitted.) It likewise determined the evidence presented by both parties "clearly demonstrated that [p]laintiff sustained injuries from the accident."

Further, while the minute order summarily discusses the stipulation in a single, brief paragraph, it spends five pages outlining the evidence showing the accident injured plaintiff. The court noted that two treating physicians – Dr. Tsai and Dr. Najafi – testified that the accident caused plaintiff's back injuries. Similarly, Dr. Dennis believed the accident caused soft tissue injuries and reaggravated plaintiff's lower back pain. And the court correctly observed this evidence was uncontradicted, as none of the other witnesses had any opinion as to whether plaintiff's back injuries were caused by the accident. The parties' stipulation had no bearing on these findings.

Defendants also argue the trial court erred by ignoring the weight of the evidence presented to the jury. They maintain the jury's lack of causation finding was supported by the following evidence: (1) plaintiff was involved in automobile accidents in 2012 and 2014 and had a slip and fall accident in 2016; (2) the accident was minor; (3) plaintiff suffered from back pain prior to the accident; (4) plaintiff did not complain of any pain at an appointment five months after the accident; (5) the degeneration of

11

plaintiff's disc would have occurred even without the accident; and (6) plaintiff was an unreliable witness.[4]

However, none of this evidence inherently disproves that plaintiff suffered some degree of injury from the accident. While she suffered from pain before the accident, the undisputed evidence shows she was pain free for 22 months prior to its occurrence. She then began experiencing back pain the day after the accident. And there was testimony from three separate physicians – Dr. Najafi, Dr. Tsai, and Dr. Dennis – that the accident injured plaintiff. In contrast, there was no testimony that plaintiff was uninjured by the accident. Though the pain subsided while she was in chiropractic treatment, which appears to have overlapped with the appointment cited by defendants, it resumed after she was discharged. Finally, as the trial court found, there was no evidence that plaintiff's complaints of pain were solely due to degenerative disc changes. Rather, the testimony indicated that the accident reaggravated her back pain and caused soft tissue injuries.

At best, defendants have shown there were evidentiary conflicts as to causation. This alone is insufficient to reverse the trial court's order. In determining whether a new trial was warranted, the court had discretion to reweigh the evidence, reassess witness credibility, and draw different inferences than the jury. (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs*, *supra*, 67 Cal.App.4th at p. 751.) And we must affirm its order even if there was a substantial conflict in the evidence. Defendants have not shown the court's ruling was outside the bounds of reason. Thus, the court did not err in granting a new trial.

---

[4] Defendants also claim that plaintiffs' evidence "as to loss of earnings was inconsistent," but it is unclear how this relates to causation.

## III

## DISPOSITION

The trial court's order granting a new trial is affirmed.  Plaintiff is entitled to her costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.